TIPTON *v.* SMYTHE.

## Opinion delivered April 16, 1906.

1. CONSTITUTIONAL LAW—ACT CALLING IN STATE BONDS.—The act of May 3, 1901, providing for the calling in and payment of certain State bonds, is not invalid in imposing upon the treasurer the duty of ascertaining their validity, as an appeal to the courts could be had from his adverse decision. (Page 396.)

2. SAME—STATUTE OF LIMITATION.—The Legislature may prescribe a period of limitation within which rights may be asserted, even though none existed when the rights accrued, or may shorten a period of limitation which existed when the right accrued, provided the added limitation is reasonable and affords an ample opportunity for the assertion of existing rights. (Page 397.)

3. SAME—VALIDITY OF LIMITATION ACT.—Whether a statute of limitation affords a reasonable time for the assertion of rights existing at the time of its passage is a question primarily for the Legislature, and its decision will not be overruled by the courts unless a palpable error has been committed. (Page 397.)

4. SAME—ACT CALLING IN STATE BONDS.—In determining whether a statute calling in State bonds for payment is reasonable, the court must consider the circumstances under which it is to apply, and whether the notice provided for is reasonable. (Page 399.)

5. SAME.—The act of May 3, 1901, providing for calling in certain State bonds enacted, that immediately after its passage the Treasurer should make a call for all outstanding valid bonds of the State except those of the issue of 1899, and that publication thereof should be made in a daily newspaper published in Litttle Rock, and that certified copies should be filed with the secretaries of the stock exchanges of New York, Boston and St. Louis, six months before the day fixed for expiration of the day fixed in the notice for expiration of the time for presenting the bonds for redemption. *Held,* that the statute imposed no unreasonable terms either as to length of time or adequacy of the notice. (Page 400.)

6. SAME—IMPAIRMENT OF OBLIGATION OF CONTRACTS.—The act of May 3, 1901, providing that certain bonds of the State should be called in and paid, and that, unless presented within the time required, they should be barred, is not unconstitutional as impairing the obligation of the contract in depriving the bondholder who failed to present his bond in time of the right to use his bond in payment of the purchase price of Real Estate Bank lands, as provided by Kirby's Digest, § 4866, as the latter statute was enacted after the bonds were issued, so that its provisions did not become a part of the contract. (Page 401.)

7. SAME—A statute which takes away the right of a bondholder to use his bond in payment of the purchase of a certain class of public lands

can not be held to impair the obligation of the contracts if such statute provides for payment of the bond in money. (Page 402.)

Appeal from Pulaski Circuit Court; *Edward W. Winfield,* Judge; reversed.

*Robert L. Rogers, Attorney General,* for appellant.

1. The act calling in the outstanding bonds was passed after they had fallen due. It was an act of limitation, and such securities were received subject to any reasonable changes the Legislature might make in this respect after the bonds were due. The right to a particular remedy is not a vested right, and the State has control over the remedies it offers suitors in its courts. Cooley's Const. Lim. 361.

The time allowed by the act, six months, was a reasonable time. 8 Bush (Ky.), 348; 168 U. S. 90. Upon leaving the realm for a considerable length of time it was incumbent upon the appellee either to present his bond for payment, or to take proper steps to have his interests protected during his absence, in the event such action should be taken by the Legislature. His absence and negligent failure should give him no advantage over one who remained but failed to present his bond. Statutes of limitation operate upon demands existing at the time of passage in the same manner as upon those accruing on the date at which they take effect. 5 Ark. 510; 6 Ark. 513; 24 Ark. 385; 15 Ark. 146; 10 Ark. 155.

2. The fourth section of the act deprives appellee of benefits under § 4866, Kirby's Digest, authorizing the acceptance of such bonds in payment for Real Estate Bank lands.

*Bradshaw, Rhoton & Helm,* for appellee.

1. The act seeks to take property without due process of law, and is in violation of art. 2, sec. 8, art. 2, sec. 13, and art. 2, sec. 21, Const. Ark., and also in violation of amendments 5 and 14, Const. U. S. See, also, 8 Cyc. 1080a and 1097, 3; 95 U. S. 565; 2 L. R. A. 655 and note.

2. When the bond was issued, no law of this State existed providing for calling in the bond, nor any limitation applicable thereto, nor provision for its cancellation, save that implied by payment thereof. 8 Cyc. 931; 42 U. S. 311; 43 N. J. L. 495. The State and Federal constitutions prohibit laws which

impair the obligations of contracts. Art 2, sec. 17, Const. Ark.; art. 1, sec. 10, Const. U. S. See also 56 U. S. 304; 114 U. S. 270; 10 How. 190; 70 Ark. 300. If a statute is so unreasonable as to impair the obligations of a contract, it will not be upheld. 135 U. S. 662; 176 U. S. 398. When the State contracts, it surrenders its sovereignty to the extent of the obligation imposed by law to perform its contracts. 15 Am. & Eng. Enc. Law, 1041; 8 Cyc. 940. The courts will uphold the contracts of a State where an official attempted to act under authority of a statute passed subsequent to the contract which impairs its obligation. 15 Am. & Eng. Enc. Law, 1048; 140 U. S. 1.

3. Though the State may change the remedy in force at the time of making a contract, if it leaves no remedy, it is void. The party is entitled to some remedy, and it must be substantially equivalent to the one in force at the date of contract. 15 Am. & Eng. Enc. Law, 1053. A creditor has a vested right in the remedies existing at the date of the contract for the recovery of his debt. 97 U. S. 293; 122 U. S. 284; 10 L. R. A. 405, note; 197 U. S. 570; 57 U. S. 16; 33 Ark. 81; 1 Neb. 373; 81 Cal. 9; 39 Cal. 270. See also 57 Ark. 400.

4. Since the act (sec. 3) only prohibits the payment of the bond out of the State treasury, it may still be received in payment for land. Kirby's Digest, § 4866; 57 Ark. *supra;* sec. 2, act April 6, 1869; 192 U. S. 286.

McCULLOCH, J. Appellee, R. M. Smythe, being the owner of a bond numbered 2034 in the sum of $1,000 with fifty-five semi-annual interest coupons of $30 each attached thereto, issued by the State of Arkansas on January 1, 1870, and due thirty years after date, applied to the Commissioner of State Lands to purchase a certain tract of Real Estate Bank lands situated in Phillips County at the price of $240, and tendered to the Treasurer of State eight of said interest coupons in payment therefor.

The Treasurer refused to accept said coupons on the ground that the bond and coupons attached were barred because not presented within the time required by an act of the General Assembly approved May 3, 1901, and appellee thereupon presented to the circuit court of Pulaski County his petition for writ of mandamus to require the Treasurer to accept said coupons in payment for the land.

The Treasurer appeared, and demurred to the petition; the demurrer was overruled, and final judgment was rendered awarding the writ in accordance with the prayer of the petition, and the Treasurer has appealed to this court.

Said bond was issued by the State pursuant to the provisions of an act of the General Assembly of April 6, 1869, providing for the funding of the public debt of the State, the particular bond in question being a reissue, under said act, of Real Estate Bank bonds then outstanding. Section 10 of said act of 1869 pledged the faith of the State for the payment of said bonds and interest, and to provide annually a sinking fund to pay off the principal as the same should become due. Section 11 of the act provides that "the proceeds of all of the mortgages, notes, bills, and other securities in possession of the State, obtained as security for the bonds issued to the Real Estate and State Bank, are hereby set aside as a sinking fund for the payment of the interest and principal of the bonds to be issued in pursuance of this act."

The act of May 3, 1901, the validity of which is challenged by appellee, is entitled "An act to provide for the cancellation of certain State bonds, and to fix the rate of Sinking Fund tax." It provides (sec. 1) that immediately after its passage "the State Treasurer shall make a call for all outstanding valid bonds of the State, except those of the issue of 1899;" and (sec. 2) that the publication should be made in a daily newspaper published in the city of Little Rock, and certified copies of the call should be filed with the secretaries of the stock exchanges of New York, Boston and St. Louis, six months before the day fixed in the notice for expiration of the time in which the owners of bonds were allowed to present bonds for redemption. Section 3 provides that the call or notice shall warn all holders of bonds to present same for redemption and payment within six months from the first day of said publication, "or that said bonds shall thereafter be null and void and nonpayable out of the treasury." Section 5 provides that all valid bonds presented within the time prescribed shall be redeemed and paid by the Treasurer out of the moneys in his hands to the credit of the sinking fund, and the succceeding section provides for a levy of taxes to raise a sinking fund, out of the which the bonds shall be paid.

Section 4 of the act is as follows:

"All persons who shall hold any of said valid bonds, and shall neglect or refuse to present same to the Treasurer of State for redemption within the time prescribed by this act and set out in said notice, shall thereafter be debarred from deriving any benefit from same; and said bonds shall thereafter be invalid and nonpayable. The Treasurer of State shall, upon expiration of the period of presentation and redemption herein fixed, indorse on the record of each of said bonds herein called in but not presented that same is barred of payment by the provisions of this act, and same shall no longer be carried on the books of the Treasurer or Auditor as part of the valid indebtedness of this State."

Appellee in his petition attacks the validity of the act of May 3, 1901, on the following grounds:

"A. Because said act seeks to deprive the owner of this bond of his property, without due process of law, by canceling said bond without payment, in violation of the Constitution of the State of Arkansas, and of the Constitution of the United States.

"B. Because said act seeks to call in or to cancel, without payment, an obligation of the State of Arkansas, under terms and condition which were not the law, and not therefore a part of the contract at the time of the issuance of said bond, and thereby impairs the obligation of the contract between the State of Arkansas and the holder of the bond, and said act is in conflict with the Constitution of the State of Arkansas, and the Constitution of the United States.

"C. Because the time within which to present said bond for payment is too short, and in violation of public policy.

"D. Because said act does not repeal section 4866 of Kirby's Digest, providing for the acceptance of said bonds in payment of the purchase price of Real Estate Bank lands belonging to the State of Arkansas."

A feature of both the first and second contentions of appellee, that the act in question seeks to call in and cancel the bonds of the State without payment thereof, can easily be disposed of by reference to the express terms of the act itself. The express object and purpose of the act is to call in the bonds for payment and redemption, and not for adjudication as to their validity or

cancellation without payment. No unreasonable provisions are found in the act requiring the bondholder to submit his bond to the Treasurer or any other person or board for final determination as to its validity. It is true that the act authorized the Treasurer to pay valid bonds only, and thereby imposed upon him the duty of ascertaining the validity of all bonds presented for payment; but his adverse decision as to the validity of a bond was in no wise binding upon the bondholder, to whom the courts are always open for an adjudication of such questions. In this respect the act in question is entirely different from the statute condemned by this court in *McCracken* v. *Moody,* 33 Ark. 81, whereby holders of school district warrants were required to present them within a fixed time for cancellation and reissue, and to submit them for final determination as to their validity to a board composed of the county judge and county clerk.

It is urged against the validity of the statute that it is in violation of the Constitution of this State and of the Constitution of the United States, because the time within which the bonds must have been presented was too short, and the effect was to deprive the holder of his property "without due process of law," and that it impaired the obligation of the contract between the State and its bondholders inasmuch as, at the date of the issuance of the bond, no authority existed in the law for peremptorily calling in such obligations.

We do not think either contention is sound. The statute merely prescribes a period of limitation within which outstanding past-due bonds of the State might be presented for payment and redemption. That the Legislature may prescribe a period of limitation within which rights may be asserted, even though no limitation existed when the right accrued, or may shorten a period of limitation which existed when the right accrued, is too well settled now for controversy. The only restriction upon that power is that the added limitation must be reasonable and must afford an ample opportunity for the assertion of existing rights, otherwise the effect would be to impair the obligation of a contract or to deprive a person of property without due process of law.

Chief Justice WAITE in delivering the opinion of the court in *Terry* v. *Anderson,* 95 U. S. 628, said: "This court has often

decided that statutes of limitation affecting existing rights are not unconstitutional, if a reasonable time is given for the commencement of an action before the bar takes effect (citing *Hawkins* v. *Barney,* 5 Pet. 451; *Jackson* v. *Lamphire,* 3 Pet. 280; *Sohn* v. *Waterson,* 17 Wall. 596; *Christmas* v. *Russell,* 5 Wall. 290; *Sturges* v. *Crowninshield,* 4 Wheat. 122). It is difficult to see why, if the Legislature may prescribe a limitation when none existed before, it may not change one which has already been established. The parties to a contract have no more a vested interest in a particular limitation which has been fixed than they have in an unrestricted right to sue. * * * In all such cases the question is one of reasonableness, and we have, therefore, only to consider whether the time allowed in this statute is, under all the circumstances, reasonable. Of that the Legislature is primarily the judge; and we can not overrule the decision of that department of the Government unless a palpable error has been committed."

The same doctrine has been announced by that court in the following cases: *Koshkonong* v. *Burton,* 104 U. S. 668; *Vance* v. *Vance,* 108 U. S. 514; In re *Brown,* 135 U. S. 703; *Turner* v. *New York,* 168 U. S. 90; *Saranac Land & Timber Co.* v. *Comptroller of N. Y.* 177 U. S. 318; *Wilson* v. *Iseminger,* 185 U. S. 57.

To the same effect see Cooley's Const. Lim. (7 Ed.), p. 523; 2 Lewis' Sutherland, Stat. Const. § 668; *Meigs* v. *Roberts,* 162 N. Y. 371; *Bigelow* v. *Bemis,* 84 Mass. 496.

It being therefore clear that the Legislature had the power to pass a statute fixing a period within which the State's obligations should be presented for payment and redemption, it only remains for us to determine whether the statute in question prescribed a reasonable limitation upon the right of presentation. Of this the Legislature is primarily the judge, as we have already seen. *Koshkonong* v. *Burton, supra.*

"It is essential," says Judge Cooley, "that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action; though what shall be considered a reasonable time must be settled by the judgment of the Legislature, and the courts will not inquire into the wisdom of its decision in establishing the period of legal bar, unless the

time allowed is manifestly so insufficient that the statute becomes a denial of justice." Cooley's Const. Lim. (7 Ed.), p. 523.

In determining whether or not the statute is reasonable, the court must consider the circumstances under which it is made to apply, and also whether the notice provided for is reasonable.

"It is evident from this statement of the question that no one rule as to length of time which will be deemed reasonable can be laid down for the government of all cases alike. Different circumstances will often require a different rule. What would be reasonable in one class of cases would be entirely unreasonable in another." In re *Brown, supra.* However, a reference to cases will illustrate the shortest periods which the courts have approved as reasonable. The shortest statute of limitation of this State which has theretofore been passed upon by this court is the two years statute as to suits to recover lands held under sales for nonpayment of taxes, and the court has repeatedly upheld the statute. *Ross* v. *Royal,* 77 Ark. 324; *Finley* v. *Hogan,* 60 Ark. 499.

In *Terry* v. *Anderson, supra,* a statute which limited the time for bringing suit to nine and a half months was held not unreasonable.

In *Turner* v. *New York, supra,* the Supreme Court of the United States, following the decision of the New York Court of Appeals in *Meigs* v. *Roberts, supra,* held that a statute of that State providing that deeds from the Comptroller of the State of lands in the forest preserve sold for nonpayment of taxes should, after having been recorded for two years and in any action brought more than six months after the act took effect, be conclusive evidence that there was no irregularity in the assessment of the taxes, was a statute of limitation, and as such was reasonable and valid. This decision was also followed in *Saranac Land & T. Co.* v. *Comptroller, supra,* where Mr. Justice McKENNA, speaking for the court, said: "The decision (in *Turner* v. *New York*) establishes the following propositions:

"1. That statutes of limitations are within the constitutional power of the Legislature of a State to enact.

"2. That the limitation of six months was not unreasonable."

In *Vance* v. *Vance, supra,* the same court upheld as reasonable a provision of the Constitution of the State of Louisiana

adopted in 1868, and a statute pursuant thereto passed March 8, 1869, requiring that all "tacit mortgages [in favor of a minor on the property of his tutor] and privileges now existing in this State shall cease to have effect against third parties after January 1, 1870, unless duly recorded." The statute gave only the period from the date of passage March 8, 1869, until January 1, 1870, within which such mortgages might be recorded, and the court held it to be a reasonable provision, even against an infant.

In *Krone* v. *Krone*, 37 Mich. 308, the court, by Judge Cooley, upheld a statute shortening the period of limitation to one year on causes of action then existing. In *Osborne* v. *Lindstrom*, 9 N. D. 1, a statute under which an existing cause of action could be asserted within nine months after the statute went into effect was upheld as reasonable. In *Bigelow* v. *Bemis, supra*, the Supreme Court of Massachusetts held that a statute was reasonable which shortened the period of limitation and left about five months within which an existing cause of action might be asserted.

Applying the rule illustrated by these cases, we see no grounds upon which the statute under consideration can be held to be unreasonable.

It must be remembered that when this statute was passed the bonds were past due about a year and a half. The statute required the notice to be published in a daily newspaper in the capital city of the State, and certified copies to be filed with the secretaries of the stock exchanges of New York, Boston and St. Louis for six months before the expiration of the time for presenting the bonds for payment.

It is alleged in the petition that appellee was, at the time of the passage of this act and the publication of the notice, without the limits of the United States, and had no information thereof. It is argued that the statute was unreasonable because a bondholder so situated could receive no notice of the terms of the statute. The same argument could be made in favor of a bondholder in foreign lands if the statute had given six years, instead of six months, for presentation if he had been making no effort to secure payment of his matured demand against the State. The Legislature doubtless had in contemplation, when it fixed a short period, that the bonds were past due, and that the

holders were accessible and in waiting for payment. It was not unreasonable to anticipate such a condition, and indulge the reasonable presumption that the holders of matured bonds would receive notice given in the manner pointed out by the statute. It is known that such securities are generally handled through the medium of the stock exchange in the principal cities of the country, and that information concerning their value may be ascertained through those channels.

We can not say that the statute imposed such unreasonable terms, either as to the length of time or adequacy of the notice, that it deprived the bondholder of his property "without due process of law," or impaired the obligation of the contract.

Again, it is argued that the statute in question impairs the obligation of the contract if it be construed to bar the bondholder of using the bond in payment of Real Estate Bank lands, as provided by statute. Kirby's Digest, § 4866. The statute just cited provides that such bonds shall be receivable in payment of the purchase price of Real Estate Bank lands, but it was enacted February 26, 1879, long after the issuance of the bonds, and therefore its provisions did not enter into and become a part of the contract. But, conceding that they did, the contract was in no wise impaired by the act of May 3, 1901, as payment of the bond in money was provided for, and would have been made if it had been presented. The Supreme Court of the United States in the case In re *Brown, supra,* where a statute authorizing the issuance of refunding bonds, as an inducement for acceptance of the bonds, provided that they should be receivable for taxes, held that a subsequent statute limiting the time within which the same might be so used was void because it impaired the obligation of the contract. The decision was placed upon the ground that, as long as the bonds remained unpaid, the holder had, according to the terms of the original statute authorizing the issuance of the same, the right to use them in payment of taxes, and that a restriction of that right impaired the obligation to that extent. No provision was made for payment of the bonds within the limits prescribed by the new statute, and the court found that it would be impracticable for the bondholder to use all the bonds in payment of taxes within the time prescribed.

26

The statute we are now considering is vastly different in its operation. There can be no higher method of discharging a past due obligation than by payment in money; and when this method of payment was provided by the statute, the bondholder sustained no impairment of his contract by being deprived of the right to use it in payment for lands.

Lastly, it is contended that the statute does not in express terms repeal the act of 1879, making the bonds receivable in payment of the purchase price of Real Estate Bank lands, and should be construed not to deprive the holder of that right given by the former statute. The statute in the broadest terms provides that bonds not presented within the time prescribed should thereafter be treated as invalid and barred for all purposes. By no sort of reasoning can the act be construed to leave the bonds in force for the purposes of use in payment for lands purchased from the State.

The circuit court erred in awarding the writ of mandamus, and the judgment is reversed and cause remanded with directions to sustain the demurrer to the petition.