David A. OWEN and Juanita OWEN
*v.* Dr. F. M. WILSON et al

76-4                                                       537 S.W. 2d 543

Opinion delivered June 21, 1976

*McMath, Leatherman & Woods,* for appellants.

*Frierson, Walker, Snellgrove & Laser; Barrett, Wheatley, Smith & Deacon,* and *Cathey, Goodwin & Hamilton,* for appellees.

JOHN A. FOGLEMAN, Justice. David A. Owen underwent abdonimal surgery by Dr. F. M. Wilson, assisted by Dr. Henry S. Keisker, on February 6, 1969, in the operating room at St. Bernard's Hospital in Jonesboro. On June 10, 1975, Owen and his wife filed the complaint in this action against Drs. Wilson and Keisker and employees of the hospital, alleging that the physicians negligently closed the incision made for the operation without removing a surgical instrument they had introduced into his body and that the hospital employees had negligently failed to count the surgical instruments used. The physician defendants and Aetna Casualty & Surety Co., the carrier for the hospital, denied negligence and pleaded the statute of limitations. Ark. Stat. Ann. § 37-205 (Repl. 1962). Each of them filed a motion for summary judgment with supporting affidavit. The motions were based upon the statute. The trial court granted these motions and we affirm.

The facts considered were those stated in affidavits by the physicians, the administrator of the hospital and by appellants. Viewed in the light most favorable to appellants, these affidavits showed that:

> Dr. F. M. Wilson performed a right hemicolectomy on David A. Owen on February 6, 1969. He was assisted by Dr. Henry W. Keisker. There was no instrument count at the end of the operation before the incision was clos-

ed. Appellant had an infection in the area of the surgery and remained in the hospital for 23 days. The infection continued for some four months thereafter. Appellant was seen by Dr. Wilson on nine visits by the patient, the last on January 20, 1970, for routine postoperative care. On the last occasion appellant complained of rectal bleeding. Appellant, not having regained his strength two years after the operation, sought and obtained treatment by a chiropractor between June, 1971, and January 18, 1975. Appellant had diarrhea most of the time for six years following the surgery and on two occasions — April 11, 1973 and October 2, 1973 — had emergency treatment prescribed by Dr. G. D. Poole and Dr. Bascom P. Raney, respectively, at St. Bernard's Hospital. Finally appellant went to Dr. Wilson on January 28, 1975, thinking that his condition must have been related to the surgery. When he told Dr. Wilson of his suffering from diarrhea, this physician ordered X-rays, which disclosed a hemostat or surgical clamp in appellant's abdomen. Appellant was told by the doctor that the clamp had been left inside him by mistake at the time of the 1969 surgery. On February 19, 1975, Dr. Buckman of Little Rock removed a six-inch surgical scissors from appellant's abdomen. No X-rays or other procedures which would have disclosed the presence of the surgical instrument had been ordered or taken prior to those taken in January 1975.

Both physicians and the hospital administrator denied that the presence of the surgical instrument was concealed from the patient. Dr. Wilson and Dr. Keisker each stated that he had no knowledge or reason to believe or suspect the presence of the surgical instrument prior to the X-rays Dr. Wilson ordered taken. The hospital administrator stated that no employee of the hospital concealed the presence of the instrument from appellant or anyone else.

The applicable statute, Ark. Stat. Ann. § 37-205 (Repl. 1962), reads:

Hereafter, all actions of contract or tort for malpractice, error, mistake, or failure to treat or cure, against physicians, surgeons, dentists, hospitals, and sanitaria, shall be commenced within two [2] years after

the cause of action accrues. The date of the accrual of the cause of action shall be date of the wrongful act complained of, and no other time.

Appellants rely entirely upon the "continuing tort" theory to prevent the bar of the statute. Under this theory, it is urged that the "wrongful act" commences when the surgeon closes an incision without removing a foreign object he has inserted and continues as long as the object remains undetected. Appellants' theory is that there was a continuing invasion of the patient's body by the physician which constituted a continuing tort. Appellants proceed upon the assumption that this court has not heretofore decided whether the "continuing tort" theory operates to toll the statute of limitations and read *Williams* v. *Edmondson*, 257 Ark. 837, 520 S.W. 2d 260 as not deciding that question. Appellants properly admit that the theory was advanced in that case. We did reject that theory in *Williams*, however, when we said that the continuing tort theory best addressed itself to the General Assembly, which has the responsibility for establishing public policy on that issue. Our views on the subject remain unchanged. They were not confined to the particular fact situation there presented. The negligence both here and there took place at the time the physician acted or failed to act. In *Williams*, it was at the time of reading the X-rays. Here it was at the time of closing the incision without removing the foreign object.

Appellants also argue that even if the statute would operate as a bar to their cause of action, it is unconstitutional and void because it deprives them of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution. They rely in part upon *Emberson* v. *Buffington*, 228 Ark. 120, 306 S.W. 2d 326, where we found Ark. Stat. Ann. § 75-915 (Repl. 1957) in violation of § 13, Art. II of the Arkansas Constitution. That statute was considerably different. It completely deprived a certain class, i.e., persons related to the driver of a motor vehicle, of any remedy for damages caused to them by the negligence of the driver while they were passengers in a vehicle driven by him. That is not the case here. Any statute of limitations will eventually operate to bar a remedy and the time within which a claim should be asserted is a matter of public policy, the determination of which lies almost exclusively in the

legislative domain, and the decision of the General Assembly in that regard will not be interfered with by the courts in the absence of palpable error in the exercise of the legislative judgment. *Tipton v. Smythe,* 78 Ark. 392, 94 S.W. 678, 7 LRA (n.s.) 714, 115 Am. St. Rep. 44, 8 Ann. Cas. 521. The statutory time within which an action must be brought cannot be judicially pronounced unreasonable unless it is so short as under the circumstances to amount to a practical denial of the right itself. *Steele v. Gann,* 197 Ark. 480, 123 S.W. 2d 520, 120 ALR 754. We are in no position to say that the legislative determination that two years (rather than the three years provided by the statute in *Steele*) is such an unreasonably short period of time for those situated like appellants to discover and assert their cause of action, absent fradulent concealment, to deprive them of due process of law or to deprive them of any remedy. It is not contended here that there was any concealment by appellees. There is really little difference in the effect of the "continuing tort" theory and the theory that the statute does not begin to run until discovery of the wrong, which we rejected in *Steele v. Gann,* supra.

It is true that we did not actually decide the constitutional questions posed here in *Williams.* We did, however, clearly imply that the act was constitutional by reference to our holding in *Carter v. Hartenstein,* 248 Ark. 1172, 455 S.W. 2d 918. There we upheld a statute limiting actions for deficiencies in design, planning and supervision of construction of improvements to real estate to four years. It seems that the problems of discovery of hidden defects in structures would be at least as great as in human beings. Humans are conscious of pain, illness, and other symptoms of disorder, but hidden defects in buildings may not be evidenced for many years, and then perhaps only because injuries and damages have been inflicted by reason of them. Still, we found no constitutional infirmity in the statute there involved. The vital question is one of reasonableness, and the courts may not strike down a statute of limitations unless the period before the bar becomes effective is so short that it amounts to a virtual denial of the right itself or it can be said that the legislature has committed palpable error. *Tipton v. Smythe,* supra; *Carter v. Hartenstein,* supra; *Steele v. Gann,* supra; *Mills v. Scott,* 99 U.S. 25, 25 L. Ed. 294 (1879). See also, *Canadian Northern Railway Co. v. Eggen,* 252 U.S. 553, 40 S. Ct. 402, 64 L. Ed. 713 (1920); *Wichelman v. Messner,* 250 Minn. 88, 83

N.W. 2d 800, 71 ALR 2d 816 (1957). In making this evaluation the basic policy reasons for statutes of limitations come into play. They were well expressed in *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 65 S. Ct. 1137, 89 L. Ed. 1628 (1945) in these words:

> Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. [Citation omitted.] They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. *****

Appellants' arguments as to constitutionality have been rejected by the Supreme Court of Missouri in considering a statute very similar to the one before us. *Laughlin* v. *Forgrave*, 432 S.W. 2d 308 (Mo. 1968). We also must reject appellants' arguments which might more appropriately be addressed to the General Assembly as policy matters.

The judgment is affirmed.