Anna Mae BAKER *v.* RADIOLOGY ASSOCIATES, P.A.;
George Norton, M.D.; and Robert Laakman, M.D.

CA 00-229                                    35 S.W.3d 354

Court of Appeals of Arkansas
Division IV
Opinion delivered December 20, 2000

*McHenry & McHenry Law Firm*, by: *Donna McHenry* and *Robert McHenry*, for appellant.

*Friday, Eldredge & Clark*, by: *Laura Hensley Smith* and *Jason B. Hendren*, for appellees.

JOHN E. JENNINGS, Judge. Anna Mae Baker appeals from an order of summary judgment in which the trial court ruled that her malpractice complaint was barred by the statute of limitations. She seeks reversal on the ground that her claims fall within the "continuous course of treatment" rule that tolls the statute of limitations. We disagree and affirm.

Appellant began having annual screening mammograms at appellee Radiology Associates in 1988. She had mammograms there on March 24, 1988; August 29, 1990; September 20, 1991; October 28, 1992; November 10, 1993; November 7, 1994; October 26, 1995;

December 5, 1996; and January 22, 1998. As pertinent to this appeal, Dr. James Campbell read the mammograms of November 1994, compared them to the 1993 mammograms, and found no abnormality. Appellant's October 1995 mammograms were read by appellee Dr. George Norton, who also compared them to those done the previous year. He reported no abnormality, although he did note bilateral "benign-appearing calcifications" in his report. The December 1996 mammograms were read by appellee Dr. Robert Laakman, who found no abnormality after viewing the current studies and comparing them to those made the year before. He did report that there was a "focal area of asymmetric density in the upper outer aspect of the left breast which is unchanged in appearance," and he also noted "benign-appearing calcifications."

On January 22, 1998, appellant returned to Radiology Associates for mammograms, which were read by a different doctor. After comparing them to the 1996 mammograms, he detected an irregularity, and appellant subsequently had an ultrasound. The radiologist found a mass in the upper outer quadrant of the left breast that was consistent with carcinoma. Appellant then had a biopsy performed and was diagnosed with breast cancer. Appellant underwent

two radical mastectomies and had twenty lymph nodes removed. The cancer was found to have spread to eighteen of the lymph nodes.

On July 28, 1999, appellant filed suit against Dr. Norton, Dr. Laakman, and Radiology Associates as the doctors' employer, for medical malpractice in connection with the reading of her 1995 and 1996 mammograms.[1] Appellees filed motions for summary judgment, contending that the claims made against them were barred by the statute of limitations. In response, appellant maintained that her complaint was timely under the continuous course of treatment doctrine. She contended that under this doctrine her cause of action against appellees did not accrue until the date of her last treatment, January 22, 1998, when her final mammogram was read. She filed the affidavit of Dr. Robert Dunn, who stated that the standard of care requires that previous mammograms be reviewed with current mammograms to determine what is normal for the individual and to detect if a change has occurred within the breast. Dr. Dunn also expressed his opinion that a suspicious lesion was apparent on appellant's 1994, 1995, and 1996 mammograms and that the doctors' failure to inquire into the nature of the lesion fell below the standard of care. Appellant also filed an affidavit detailing her lengthy relationship with Radiology Associates.

The trial court ruled that the continuous-course-of-treatment exception did not apply to the facts of this case; that the two-year limitations period began to run on the date each mammogram was allegedly misread; and that her opportunity to bring suit against Dr. Norton and Dr. Laakman expired on October 26, 1997, and December 5, 1998, respectively. The court granted the motion for summary judgment because the complaint was not filed until July 28, 1999.

██ Summary judgment should be granted only when it is clear that there are no disputed issues of material fact. *Porter v. Harshfield*, 329 Ark. 130, 948 S.W.2d 83 (1997). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Tullock v. Eck*, 311 Ark. 564, 845 S.W.2d 517 (1993). All proof submitted must be viewed in the light most

---

[1] Appellant originally included a claim against Dr. James Campbell for his reading of her 1994 mammograms, but she subsequently dismissed her complaint against him.

favorable to the nonmoving party, and any doubts or inferences must be resolved against the moving party. *Pastchol v. St. Paul Fire & Marine Co.,* 326 Ark. 140, 929 S.W.2d 713 (1996).

■ The statute of limitations for medical malpractice actions is found in Ark. Code Ann. § 16-114-203 (Supp. 1999), which provides in relevant part: "(a) Except as otherwise provided in this section, all actions for medical injury shall be commenced within two (2) years after the cause of action accrues. (b) *The date of the accrual of the cause of action shall be the date of the wrongful act complained of and no other time.*" (Emphasis added.) The supreme court has consistently interpreted the limitation in § 16-114-203 strictly, commencing the two-year period from the date of the act of alleged malpractice. *Green v. National Health Labs., Inc.,* 316 Ark. 5, 870 S.W.2d 707 (1994). For example, the supreme court refused to accept either the "discovery of the injury" rule or the "continuing tort" theory in *Williams v. Edmondson,* 257 Ark. 837, 250 S.W.2d 260 (1975), a case that involved an allegation of negligence in connection with the reading of an x-ray. The court again rejected the continuing-tort theory in *Owen v. Wilson,* 260 Ark. 21, 537 S.W.2d 543 (1976), where a foreign object was left in the plaintiff's body after surgery. In both cases, the court observed that a single act of negligence was claimed and held that the statute of limitations was not tolled because the alleged wrong was completed at the time the physician acted or failed to act. The same reasoning was applied in holding that the plaintiff's case was time-barred in *Treat v. Kreutzer,* 290 Ark. 532, 720 S.W.2d 716 (1986), where the claim was filed some twelve years after a tissue biopsy was allegedly misread.

With this background, in *Lane v. Lane,* 295 Ark. 671, 752 S.W.2d 25 (1988), the supreme court adopted the "continuous course of treatment" doctrine as defined in 1 David Louisell and Harold Williams, *Medical Malpractice* § 13.08 (1982):

> [I]f the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has terminated unless during treatment the patient learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive.

295 Ark. at 673-74, 752 S.W.2d at 26-27. The court stated that this doctrine becomes relevant when the medical negligence consists of a series of negligent acts, or a continuing course of improper treatment. The court found the basis for the doctrine to be sound in that it promotes fairness to a plaintiff who undergoes a series of treatments and who might be unable to identify the precise treatment that produced the injury and in that it prevents a patient from having to interrupt the physician's treatment to file suit. In its decision, however, the court discussed its opinions in *Owen v. Wilson, supra,* and *Treat v. Kreutzer, supra,* and emphasized that "continuous treatment" was distinguishable from the "continuing tort" theory, which is based on a single act of negligence:

> In *Owen* and *Treat,* the appellants argued that a single negligent act of a physician, a misdiagnosis for example, was a continuing wrong and the statute of limitations would not begin to run until the error was discovered, on the premise that the effect of the wrong was continuous. We declined to adopt that theory, holding the cause of action to accrue at the time of the wrongful act, reasoning that the proposed theory, a public policy issue, should be addressed by the legislature.

> To hold otherwise would mean in effect that we would apply the "discovery of the injury rule" to our malpractice statute, which would change the time of the accrual of a cause of action from the time of the act to the date of discovery of the injury. This is contrary to the legislative intent plainly expressed in our statute. The limitation begins to run from the "date of the wrongful act complained of and no other time." Ark. Code Ann. § 16-114-203 (1987).

In *Lane,* the plaintiff was treated for migraine headaches over the course of eighteen years, and she contended that the treatment caused scarring and drug addition. The court held that the facts fit squarely within the continuous-treatment doctrine and found her complaint to be timely, since it was filed within two years from the date the treatment ended.

The supreme court has found the continuous-treatment rule applicable in only one other case. In *Taylor v. Phillips,* 304 Ark. 285, 801 S.W.2d 303 (1990), the plaintiff broke his jaw, for which the doctor performed surgery on September 8, 1987, and placed the jaw in a brace that was screwed into the bone parts. The plaintiff continued to see the doctor for follow-up visits and to address

complaints associated with his jaw until December 8, 1987, when the doctor's partner observed that the bones in the plaintiff's jaw were not healing properly. The next day, the doctors consulted with each other and agreed that further surgery was indicated. The plaintiff sued his doctor on October 16, 1989. The court stated:

> In this case, Taylor was clearly under a continuing course of treatment by Phillips, and so the statute did not begin to run until Taylor's treatment terminated on December 9, 1987, Taylor still had the brace screwed into his jaw bones on December 9 when Phillips and his partner agreed that Taylor needed further surgery on his jaw. Taylor's complaint was filed on October 16, 1989, well within the statute of limitations.

304 Ark. at 289, 801 S.W.2d at 305.

Since then, and consistent with its rejection of the continuing-tort theory, the supreme court has found the doctrine inapplicable to claims based on single, isolated acts of negligence. *See Raynor v. Kyser,* 338 Ark. 366, 993 S.W.2d 913 (1999); *Wright v. Sharma,* 330 Ark. 704, 956 S.W.2d 191 (1997); *Pastchol v. St. Paul Fire & Marine Ins. Co.,* 326 Ark. 140, 929 S.W.2d 713 (1996); and *Tullock v. Eck,* 311 Ark. 564, 845 S.W.2d 517 (1993). First in *Tullock v. Eck, supra,* the plaintiff was known to have an undiagnosed mass in her breast. In 1990, she was diagnosed with breast cancer that was found to be estrogen dependent. She sued her doctor who had prescribed an estrogen supplement in November of 1987, for which refills were available until May of 1989. The supreme court stated that a patient's continued ingestion of medicine prescribed by a physician was not enough to establish an ongoing course of treatment for the purpose of applying the continuous-treatment doctrine, and it held that the cause of action accrued on the date the prescription was written.

In *Pastchol v. St. Paul Fire & Marine Ins. Co.,* 326 Ark. 140, 929 S.W.2d 713 (1996), the patient was to have surgery to repair a perforated ulcer. While he was receiving anesthesia, but before the surgery had begun, the patient vomited and aspirated the contents of his stomach into his lungs. It was alleged that the patient's lungs were severely damaged and that the aspiration of the stomach contents into his lungs was the result of negligent conduct. The patient subsequently died, and it was argued that the statute of limitations should be reckoned from the date of the patient's death under the

continuous-treatment rule because the patient continued to receive medical care until he died, even though there was no claim that the post-surgery treatment was improper. The supreme court disagreed, holding that the doctrine was not designed to extend the statute of limitations in cases where only a single, isolated act of negligence is alleged. The court found the allegations made in the complaint comparable to those found in *Tullock v. Eck, supra,* where the plaintiff was able to identify the single act of negligence in prescribing estrogen, and distinguishable from the decision in *Taylor v. Phillips, supra,* where the injury stemmed, not from one act, but from the entire series of treatmentsfor the plaintiff's broken jaw.

In *Wright v. Sharma,* 330 Ark. 704, 956 S.W.2d 191 (1997), the plaintiff filed suit because he was subjected to an unnecessary surgery. The court found that the doctrine did not apply, because "[o]nly one negligent act is alleged, and that is the allegedly unnecessary surgery, which had continuing effects."

Finally, in *Raynor v. Kyser,* 338 Ark. 366, 993 S.W.2d 913 (1999), the plaintiff had seen the doctor in January of 1985 for chronic sinusitis and nasal polyps, which the doctor removed. The plaintiff returned to the doctor in August 1988 and July 1990 for removal of polyps and papillomas, and she saw the doctor for a last follow-up visit in March 1991. The doctor requested that the plaintiff return in six months. However, she failed to return even though she received at least two courtesy letters from the doctor reminding her to do so. She returned on October 18, 1994, and was scheduled for surgery one week later for chronic obstructive rhino sinusitis; during the surgery, several polyps were removed. She returned for a follow-up visit in November 1994. In March 1995, the doctor ordered an MRI for the plaintiff, after her internist sent her back to the doctor because she was complaining of blurred vision. The MRI revealed a large malignant inverted papilloma in the maxillary sinus cavity. The plaintiff filed suit against the doctor on February 27, 1997. In affirming the grant of summary judgment based on the statute of limitations, the supreme court stated:

> The instant facts are distinguishable from *Lane* and *Taylor.* In both cases where we have applied the continuous treatment theory to toll the statute, the patient has received active, ongoing medical care and attention beyond the time of a specific negligent act or

series of acts — that is, something more than the mere continuation of the physician-patient relationship. In the case at bar, active treatment of an existing patient condition ceased following Raynor's postoperative visit in November 1994. Dr. Kyser's act of setting a future office visit six months later did not constitute the requisite continuous treatment needed to toll the statute. We have stated one policy rationale for the continuous treatment doctrine is to prevent the patient from having to interrupt the physician's treatment to bring suit. *Tullock v. Eck,* 311 Ark. 564, 845 S.W.2d 517 (1993). Where there is no more physician-patient interaction occurring other than the scheduling of future visits, the policy is satisfied as there is no interruption of "treatment for the malady which was the object of the treatment...." *Tullock,* 311 at 570. Were we to hold otherwise, we would no doubt come perilously close to embracing continuous-tort theory, which we have heretofore consistently rejected.

338 Ark. at 372-373, 993 S.W.2d at 916.

■ The case at bar is not one where the plaintiff is unable to identify any one treatment that produced the injury. Instead, the wrongs complained of are separate and distinct. Appellant contends that Dr. Norton committed malpractice in reading her mammograms on October 26, 1995, and that Dr. Laakman negligently misread her mammograms on December 5, 1996. The continuous-treatment doctrine does not apply to single, isolated acts of alleged negligence. To set this case apart from that rule, appellant contends that the doctrine should apply because current mammograms are viewed in conjunction with previous mammograms to determine if a change has occurred. We find this distinction unpersuasive under the circumstances of this case.

In *Noack v. Symenow,* 518 N.Y.S.2d 495 (N.Y. App. Div. 1987), it was held that where radiologists maintain no contact with a patient aside from the performance of a diagnosis, and the diagnosis is imparted directly to the treating physician, the performance of each diagnosis is complete and discrete and does not constitute continuous treatment, despite the fact that on successive occasions the radiologists compared prior studies with the most recent ones. The same conclusion was reached in *White v. Bridgeport Radiology Associates,* 1993 WL 407861 (Conn. Super.) There the court remarked that a comparison of test results suggests adherence to appropriate diagnostic procedure, not a change in the level or

nature of trust and confidence between patient and radiologist. The case cited by appellant, *Garcia-Alano v. Guttman Breast Diagnostic Institute, Inc.,* 188 A.D.2d 262, 590 N.Y.S.2d 453 (1992), is distinguishable. The plaintiff was being actively monitored for a growth and discoloration on her breast, and her subsequent visits and mammograms were all related to that initial finding. The court found that the series of examinations related to the suspicious area established a continuous course of treatment, as opposed to isolated breast examinations.

■ ■ Appellant concedes that the mammograms were conducted for screening purposes only. As far as we can tell from the record, the reports made by the radiologists were sent to appellant's gynecologist, but there is no indication that the radiologists were engaged in any active consultation with the gynecologist or in the ongoing treatment of appellant for any specific condition. We hold that the trial court did not err in concluding that the continuous course of treatment did not apply to the diagnoses rendered by the radiologists in this case. We also affirm the decision as to Radiology Associates. When an employee has been released or dismissed, and the employer has been sued solely on a theory of vicarious liability, any liability of the employer is likewise eliminated. *Hartford Ins. Co. v. Mullinax,* 336 Ark. 335, 984 S.W.2d 812 (1999).

Affirmed.

BIRD and STROUD, JJ., agree.