Carlene RHODES *v.* PROGRESSIVE CASUALTY INSURANCE COMPANY

CA 91-130 820 S.W.2d 293

Court of Appeals of Arkansas
Division II
Opinion delivered December 11, 1991

*Gregory E. Bryant*, for appellant.

*Matthews, Sanders, Liles & Sayes*, by: *Marci Talbot Liles*, for appellee.

MELVIN MAYFIELD, Judge. Carlene Rhodes brings this appeal from a summary judgment in favor of appellee, Progressive Casualty Insurance Company. We find no error and affirm.

This case was submitted to the trial court upon a motion for summary judgment; the motion attached and incorporated the appellant's deposition and other exhibits. From these matters, we can determine that, on February 15, 1989, appellant applied for insurance coverage through AAA Auto Club on her 1987 Chevrolet Silverado truck. The appellant dealt with Randal M. Crossland, an agent for AAA, and Mr. Crossland obtained coverage for appellant's vehicle with Progressive Casualty Insurance Company. On the day the application was made, appellant made a down payment of $198.00 toward the premium. On April 4, 1989, she made the first of two remaining installment payments. Appellant subsequently received a cancellation notice citing non-payment of premium. She then contacted Mr. Crossland, and he assured her that she did in fact have coverage even though there had been a mix-up in the processing of her check for the April installment. Appellant then received a bill from the

company through whom the vehicle was financed, stating that they were securing coverage for her because the vehicle was uninsured. She again contacted Mr. Crossland, who indicated he had made a mistake with her policy but would take care of it and again assured her that she had coverage with appellee.

Appellant was involved in an accident on August 23, 1989, and her truck was damaged. Shortly thereafter, she went to Mr. Crossland's office and was assured by him that the coverage was in effect. Appellant then told Mr. Crossland that her vehicle had been damaged in an accident, and Mr. Crossland, at that point, informed appellant that she was not insured.

Subsequently, appellant met with Greg Castleman, a local agent for appellee; he admitted that there had been a mistake but stated that appellee and AAA would "work it out." During the course of their conversation, he denied that there was any liability on the part of appellee. On October 20, 1989, appellant filed suit against Mr. Crossland and appellee, alleging her lapse of insurance coverage was a result of Mr. Crossland's negligence. Her complaint contained no allegations that appellee was negligent.

On October 30, 1990, appellant settled her claim against Mr. Crossland and executed a release on his behalf. In the release, she stated that she reserved any rights, claims, or causes of action she might have against appellee.

On November 5, 1990, appellee filed the motion for summary judgment, arguing that no cause of action remained against it because of appellant's release of her claim against Mr. Crossland. The trial court agreed and granted summary judgment on behalf of appellee. From that ruling, comes this appeal.

Appellant contends that the court erred in finding the release of Mr. Crossland eliminated any cause of action against appellee. The cases relied upon by appellant, however, deal with joint tortfeasors and are inapplicable here. In the present case, any liability that appellee might have would be imposed upon it because of its position as Mr. Crossland's principal. In *Porter-DeWitt Constr. Co.* v. *Danley*, 221 Ark. 813, 819, 256 S.W.2d 540, 543 (1953), the Arkansas Supreme Court, quoting from *Bradley* v. *Rosenthal*, 154 Cal. 420, 97 P. 875, 877 (1908), stated:

> Where a recovery is sought in an action against a principal and his agent based upon the act or omission of the agent which the principal did not direct and in which he did not participate and for which his responsibility is simply that cast upon him by law by reason of his relationship to the agent, a judgment in favor of and exonerating the agent generally *ex proprio vigore* relieves the principal of responsibility and may be availed of by the principal for that purpose.

In *Barnett v. Isabell*, 282 Ark. 88, 89, 666 S.W.2d 393, 394 (1984), the supreme court repeated the rule:

> [When] liability is claimed on the ground of the alleged negligence of a servant or agent, a judgment in favor of either the master or principal on the one hand, or the servant or agent on the other, sued alone, is res judicata, or conclusive, as to such issue of negligence, in a subsequent action against the other, a derivative responsibility being present.

(quoting *Davis* v. *Perryman*, 225 Ark. 963, 969, 286 S.W.2d 844, 847 (1956)).

In the present case, appellant's claim against appellee for liability is based solely upon the relationship of appellee and Mr. Crossland as principal and agent. Appellant admitted appellee played no active role in the mix-up concerning her insurance and that she placed no blame on the company independent of Mr. Crossland's actions. Where the liability of a master for a tort of his servant is based solely on the doctrine of *respondeat superior*, a valid release of the servant operates to release the master:

> In regard to a release of the servant as releasing the master, it has been said that the same rule should apply when the question of a servant's liability is finally determined by a release as when it is determined by a verdict. One view expressed is that because the basis of liability on the theory of respondeat superior is that the master is liable only for the act of his servant, and not for anything he himself did, therefore, when the servant is not liable, the master for whom he was acting at the time should not be

liable.

53 Am. Jr. 2d *Master & Servant* § 408 (1970). Thus, when appellant released Mr. Crossland from liability and settled her claim with him, there remained no cause of action against appellee based on the acts of its agent.

 Appellant also asserts that all premiums for her insurance contract were paid and that the appellee failed to acknowledge her coverage. There is no evidence in the record, however, to support this argument. The record reflects that only the first two of three installment payments were paid. Additionally, the policy's term began on February 15, 1989, and was for a period of six months. If all premiums had been paid, coverage would have expired on August 15, 1989, eight days before the accident. The record lacks any evidence that her policy contained a grace period which would have extended coverage beyond the policy's expiration date. Appellant also asserts that the issues of whether Mr. Crossland was actually an agent of appellee and whether the appellant attempted to re-establish insurance coverage with appellee are material issues of fact which would preclude the entry of summary judgment. Once the moving party makes a prima facie showing of entitlement to summary judgment, however, the party opposing summary judgment must meet proof with proof by showing a genuine issue of material fact. *Neel* v. *Citizens First State Bank*, 28 Ark. App. 116, 119-20, 771 S.W.2d 303, 305 (1989). Appellant wholly failed to satisfy this burden. We agree with the trial court that no material issues of fact remained and that summary judgment was properly granted to appellee.

Affirmed.

CRACRAFT, C.J., and DANIELSON, J., agree.