Brandy STEPHENS and Linda Hensley *v.*
Robert PETRINO, M.D., Jack Alston, M.D.,
and Richard McVay, M.D.

01-1082                                    86 S.W.3d 836

Supreme Court of Arkansas
Opinion delivered October 10, 2002

[Petition for rehearing denied November 21, 2002.]

*Taylor Law Firm*, by: *Timothy L. Brooks*, for appellant.

*Roy, Lambert & Lovelace*, by: *Robert J. Lambert, Jr.* and *James H. Bingaman*, for appellees Robert Petrino and Jack Alston.

*Bassett Law Firm*, by: *Walker Dale Garrett* and *Shannon L. Fant*, for appellee Richard McVay.

Том GLAZE, Justice. This is a medical malpractice action in which we are called on to further develop and interpret the relationship between Ark. R. Civ. P. 15, governing the relation back of amendments to pleadings, and Ark. Code Ann. § 16-56-125 (1987), the so-called "John Doe" statute. Jurisdiction is proper in this court under Ark. Sup. Ct. R. 1-2(b)(6).

The appellants in this case are Brandy Stephens and her mother, Linda Hensley.[1] Brandy suffered from a growth on her thyroid, and underwent a thyroid lobectomy surgery to correct the situation. The surgery took place on October 26, 1994. After the surgery, Brandy began having trouble swallowing, and her face and throat began swelling. A barium swallow study indicated that she had a leak in her esophagus. Her surgeons, Dr. Robert Petrino and Dr. Jack Alston, immediately performed emergency surgery on October 28, 1994, to correct the condition, and discovered during the surgery that Brandy's esophagus had been per-

---

[1] For simplicity, only Brandy is mentioned on occasion, when both she and her mother are intended.

forated during the earlier surgery, although the perforation had not been discovered at that time.

On October 24, 1996, Brandy and her mother filed a lawsuit against Drs. Petrino and Alston, as well as their clinic, Northwest Arkansas Surgical Clinic (NASC), Siloam Springs Memorial Hospital, and "John Doe." In her original complaint, Brandy alleged that Dr. Petrino had been negligent in perforating Brandy's esophagus during the surgery, in failing to detect the perforation both during surgery and for a reasonable time afterward, and in failing to inform Brandy of the risks of the procedure. Brandy alleged alternatively that, if Dr. Petrino did not admit to being the person who perforated Brandy's esophagus, Dr. Alston, as Dr. Petrino's assistant, was the person responsible. Further, Brandy also stated that, if Drs. Petrino and Alston denied liability, then "in the alternative, an employee, agent, or other member of the hospital staff in the operating room, must have been responsible for perforating [Brandy's] esophagus." Finally, Brandy's complaint named "John Doe" defendants pursuant to Ark. Code Ann. § 16-56-125 (1987), alleging that there were persons "presently unidentified and unknown . . . [who were] ultimately attributed, during the course of discovery, to have been the person[s] or part[ies] responsible for the perforation of [Brandy's] esophagus."

Following a period of discovery, Brandy filed a third amended complaint on November 15, 1999, naming, for the first time, Richard McVay, the Certified Registered Nurse Anesthetist ("CRNA") who provided anesthesia services to Brandy during her surgery. In her third amended complaint, Brandy averred that she and her mother were substituting McVay for one of the pseudo-named John Doe defendants. Brandy specifically alleged that Drs. Petrino and Alston denied that they perforated Brandy's esophagus, and had, during the course of discovery, "alluded to or opined that the tear in the esophagus occurred during, or is at least consistent with, a perforation that can occur during the course of intubation prior to surgery. Mr. McVay, the CRNA, was responsible for the intubation of Ms. Stephens immediately prior to her surgery." Brandy also asserted that her surgeons had testified that some unknown third party, presumably a medical student, was

present in the operating room and was apparently learning how to intubate a patient; both doctors had stated that this person "appeared to be having some difficulty with the intubation process." Brandy's complaint further asserted that she never consented to the student's participation in her surgery, and she additionally alleged that Dr. Petrino, as the primary surgeon, was vicariously liable for the conduct of any students or other observers in the operating room whose conduct injured her.

Pleading in the alternative, in her third amended complaint, Brandy alleged that, if Drs. Petrino and Alston were not responsible for perforating Brandy's esophagus, then McVay, the CRNA, was negligent for the following: 1) perforating her esophagus; 2) failing to detect the perforation during surgery or afterwards; 3) failing to inform Brandy of the risk of esophageal perforation; or 4) failing to obtain Brandy's consent for the participation of the medical student, for whom McVay was vicariously liable.

McVay answered Brandy's amended complaint by asserting that his identity and involvement in the provision of anesthesia had been known to Brandy since the time of her surgery, because his name was on Brandy's medical records and the operative report that was produced on October 26, 1994. For this reason, McVay rejoined that he was not properly a "John Doe" defendant, and the two-year statute of limitations had expired as to him. McVay also specifically denied liability for perforating Brandy's esophagus, and he denied that anyone acting under his control or supervision failed to meet the applicable standards of care.

On December 13, 1999, McVay filed a motion for summary judgment, asserting that the two-year statute of limitations for medical malpractice actions had expired as to him, since Brandy had delayed naming him as a defendant for more than five years from the date of the surgery. McVay contended that, under Ark. R. Civ. P. 15, which permits the relation back of claims when the party to be added has received notice within the statute of limitations, he received no such notice and was entitled to a judgment as a matter of law. The trial court agreed, and granted McVay's motion for summary judgment on April 10, 2000, finding that at the time of Brandy's surgery, Brandy and her mother were aware

of the identity and participation of both McVay and the medical student, so their complaint against him was barred by the statute of limitations.

On June 19, 2000, Drs. Petrino and Alston filed a motion for partial summary judgment, alleging there was no genuine issue as to any material facts regarding their liability based upon the actions or inactions of Greg Millnamow, the medical student who had been one of the unnamed John Doe defendants. The two surgeons argued that, since Millnamow's identity had been known since the operative report was filed, he could not be an unnamed John Doe defendant, and the statutes of limitations had expired as to him. Further, because Brandy alleged that the surgeons were vicariously liable for Millnamow's actions, and since the statute had expired, there could be no supportable cause of action against the surgeons for Millnamow's actions. In addition, the doctors contended that Brandy's original pleadings did not impute any of McVay's negligence to them, or argue that they were negligent in their supervision of McVay, so any new allegation that they were liable via McVay would be barred by the statute of limitations, and by the fact that McVay had been dismissed from the lawsuit.

In response, Brandy filed a fourth amended complaint on June 28, 2000, specifically alleging that the surgeons were vicariously liable for the conduct of McVay and any medical student who had been in the operating room. The doctors filed a motion to dismiss this complaint on July 5, 2000, urging that the new vicarious liability allegations constituted a new cause of action that could not relate back to the original complaint. The trial court initially denied this motion, finding that the fourth amended complaint did not raise a completely new cause of action.

Drs. Petrino and Alston then filed a third-party complaint against McVay, seeking contribution and indemnification in the event a jury should determine that McVay was guilty of negligence and that negligence should be imputed to the doctors. In his answer, McVay denied that he was in any way responsible for Brandy's injuries, and asserted that the statute of limitations constituted an affirmative defense to any third-party claims. McVay also moved for summary judgment on the third-party complaint,

contending that Brandy's cause of action for vicarious liability was barred by the statute of limitations. The doctors also filed a motion for partial summary judgment on February 15, 2001, in which they argued that McVay's earlier dismissal from the lawsuit eliminated Brandy's theory of vicarious liability.

Following a hearing, the trial court granted McVay's motion for summary judgment, dismissed the fourth amended complaint as it related to the issues of vicarious liability, and dismissed the third-party complaint of the surgeons against McVay. Specifically, the court found that Brandy's allegation of vicarious liability was a separate and distinct cause of action from the original allegations, and it was not brought against the defendants within the applicable statute of limitations. Further, since McVay had previously been dismissed as a party, the court found the surgeons could not be held vicariously liable for McVay's acts.

■■ The case proceeded to jury trial on March 5, 2001, and the jury found in favor of Drs. Petrino and Alston. From that jury verdict, Brandy brings this appeal. For her first point, Brandy asserts that the trial court erred in granting McVay's motion for summary judgment on the grounds that he could not be substituted for a John Doe defendant under § 16-56-125. Our standard of review for summary judgment cases is well-established. Summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *City of Barling v. Fort Chaffee Redev. Auth.*, 347 Ark. 105, 60 S.W.3d 443 (2001). The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. *BPS, Inc. v. Parker*, 345 Ark. 381, 47 S.W.3d 858 (2001).

Here, the trial court granted McVay's motion for summary judgment upon finding that Brandy had known of McVay's involvement since the day of the surgery. In addition, the court found that McVay's participation and role in the surgery were such that they could have been discovered during the two-year statute of limitations period. Therefore, the trial court concluded that, because the John Doe statute does not apply to situations where a plaintiff knows the identity of persons involved in the incident,

Brandy made a strategic decision not to name McVay in the original complaint, and thus, the statute of limitations had expired as to him. The trial court was correct.

The John Doe statute provides as follows:

> (a) For the purposes of tolling the statute of limitations, any person, firm, or corporation may file a complaint stating his cause of action in the appropriate court of this state, whenever the identity of the tortfeasor is unknown.
>
> (b)(1) The name of the unknown tortfeasor shall be designated by the pseudo-name John Doe or, if there is more than one (1) tortfeasor, John Doe 1, John Doe 2, John Doe 3, etc.
>
> (2) Upon determining the identity of the tortfeasor, the complaint shall be amended by substituting the real name for the pseudo-name.
>
> (c) It shall be necessary for plaintiff or plaintiff's attorney to file with the complaint an affidavit that the identity of the tortfeasor is unknown before this section shall apply.

Brandy asserts that the surgeons answered the complaint by accusing some third party over whom they had no control, and never attempted to name that third party throughout discovery, until their depositions in August of 1999 — nearly five years after Brandy's surgery. Only at that time did Drs. Petrino and Alston suggest that Brandy's esophagus had been perforated by an unknown medical student who was learning how to intubate a patient. Therefore, it was not until the third amended complaint, filed on November 15, 1999, that Brandy named McVay as a defendant and substituted him for one of the John Doe defendants.

In her appeal, Brandy frames the issue as being whether or not the John Doe statute applies to persons whose "identities" are unknown, or whether the statute applies to persons whose identity as a "tortfeasor" is unknown. She states that, while she knew McVay as a softball coach, and as the person who would be responsible for anesthetizing her during her operation, she did not know that McVay was a "tortfeasor," or an individual who had committed a tort upon her. Because she did not know that he was a "tortfeasor," and did not find out that he might have been a

"tortfeasor" until she took the depositions of Drs. Petrino and Alston, after the statute of limitations had expired by three years, then she should have been permitted to substitute McVay for one of the unknown, unnamed John Doe defendants listed in her original complaint.

The only Arkansas case on the subject of the John Doe statute is *Harvill v. Community Methodist Hospital Assn*, 302 Ark. 39, 786 S.W.2d 577 (1990). In *Harvill*, the plaintiff Harvill sued her employer, Arkansas Methodist Hospital, for breach of contract and the tort of outrage. The hospital moved to dismiss, contending that it was a non-profit entity and therefore immune from suit. Harvill responded, stating that if the hospital were immune, she would amend her complaint to sue the hospital's insurer directly. During discovery, Harvill learned that the hospital was insured by St. Paul Fire & Marine Casualty Co. St. Paul moved for summary judgment on the basis that there was no contract for the hospital to have breached. The trial court granted this motion, Harvill appealed, and the court of appeals affirmed.

On remand, Harvill amended her original complaint and readopted her earlier pleadings, but directed them against the insurer. St. Paul moved to dismiss the complaint, maintaining that the action was barred by the statute of limitations; the trial court granted the motion. On appeal, Harvill argued that the trial court erred in failing to allow her amended complaint to "relate back," pursuant to Rule 15, to the filing of her original complaint. Alternatively, she argued that she should have been able to substitute St. Paul because she filed a John Doe pleading in her original complaint. This court rejected Harvill's argument, stating the following:

> John Doe pleadings are for actions against a tortfeasor whose identity is unknown. John Doe pleadings, however, are of no assistance to the appellant because before a real party can be substituted for a "Doe" defendant in the original complaint, such pleadings must still meet the requirements of [Ark. R. Civ. P.] 15(c).

*Harvill*, 302 Ark. at 46.

In order for a party to avail herself of Rule 15(c)'s relation-back provision, the facts must show four things: (1) that the claim must have arisen out of the conduct set forth in the original pleadings; (2) the party to be brought in must have such notice of the institution of the action that it would not be prejudiced in maintaining a defense on the merits; (3) *the party must have known, or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it*; and (4) the second and third requirements must have been filled within 120 days of the filing of the original complaint. *Harvill, supra* (citing *Schiavone v. Fortune*, 477 U.S. 21 (1986)) (emphasis added); *see also George v. Jefferson Hosp. Ass'n, Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999).

In *George*, the plaintiff sued Jefferson Hospital Association in a medical malpractice action. She also filed a direct action against the hospital's insurer, St. Paul, but did so by amending her original complaint against the hospital after the statute of limitations had expired. The trial court granted St. Paul's motion for summary judgment, finding that the action was time-barred because the complaint did not relate back under Rule 15(c). *George*, 337 Ark. at 215.

In affirming, the *George* court concluded that the plaintiff, George, had met the first and second requirements, because the events leading to both claims were identical, and because the hospital's insurer, against whom an amended claim was asserted, had notice of the action since its inception. *Id.* at 216. However, this court concluded that George had not established that St. Paul knew that George's omission of it from the complaint was a mistake of identity as to the proper party, holding as follows:

> [I]t is apparent that [George's] *mistake . . . was not as to St. Paul's identity but in her decision to not file immediately against the insurer as well as the hospital.* [George] *does not contend she did not have the correct identity for the insurance company.* [George] *argues instead that she believed suing St. Paul prior to judicial determination of its charitable status was legally perilous.* [George] *believed it could have resulted in the dismissal of both actions in a kind of legal "catch-22." This argument is meritless.* [George] could have sued both initially and through alternative pleading and not have jeopardized [her]

claim against either the hospital or its insurer. This court's decision in *Harvill v. Community Methodist Hosp. Ass'n*, 302 Ark. 39, 786 S.W.2d 577 (1990), is dispositive of this issue. There, as here, [plaintiff Harvill] sought relation back under Rule 15(c) contending a mistake of identity had occurred. The court construed the meaning of "mistake concerning identity" relying on federal cases construing the similar federal provision. *This court held that what [Harvill] contended was a mistake of identity was really a conscious and deliberate strategical decision. Id.* at 43. In the instant case, St. Paul had no reason to believe that George was mistaken as to its identity as JRMC's insurance company. *It could only presume that [George's] litigation decision not to sue it was a purposeful calculation, mistaken perhaps, as to its consequence but not as to its choice of parties.*

*Id.* at 216–17 (emphasis added).

█ The situation described in *George* is almost exactly the same as that presented in the instant case. Brandy knew of McVay's existence when she originally filed her lawsuit: he spoke to her before the procedure and explained that he would be the one intubating her for the anesthesia, and his name was on the operative report prepared on the day of the surgery. Further, Brandy's mother, Linda, testified at deposition that she had asked Dr. Petrino whether or not the anesthetist had torn open her esophagus. Thus, it is clear that Brandy and her mother were aware that McVay could — and should — have been specifically named as a defendant from the outset of this case, and the failure to name McVay in the original complaint was not a mere "mistake of identity." Brandy's reading of the John Doe statute is incorrect — the statute allows a complaint to be filed when the plaintiff cannot identify the tortfeasor, and does not know his name.

██ Brandy attempts to raise an argument that, pursuant to Ark. R. Civ. P. 11, she could not, in good faith, have named McVay as a defendant, because she could not have named as a defendant every person who came into contact with her in the operating room. However, given the facts of this case, there was a reasonable, good-faith basis for naming McVay in the original complaint, and it is unlikely counsel would have faced any Rule 11 sanctions for so naming him. In any event, even if the John Doe statute were to apply in this case, Brandy failed to comply

with the strictures of Rule 15 so as to permit the amended complaint to relate back to the time of the filing of the first complaint. Therefore, the trial court did not err in granting McVay's motion for summary judgment on the basis of the statute of limitations.

■ For her second point on appeal, Brandy contends that the trial court erred in granting the summary judgment motions of both McVay and the surgeons on the basis of a finding that the vicarious liability count did not relate back to the original complaint. Rule 15(a) vests broad discretion in the trial court and the exercise of that discretion will be sustained unless it is manifestly abused. *Thompson v. Dunn*, 319 Ark. 6, 889 S.W.2d 31 (1994).

■ ■ Although the parties focus their arguments on the question of whether or not vicarious liability constitutes a new and distinct cause of action from direct liability, and whether the same conduct that gives rise to direct liability can also lead to a claim of vicarious liability, we believe that this issue is more easily answerable in the following way. The trial court had previously dismissed McVay from the lawsuit when it granted his motion for summary judgment and found that any complaint against McVay would be time-barred. It is well-settled that when an employee has been released or dismissed, and the employer has been sued solely on a theory of vicarious liability, any liability of the employer is likewise eliminated. *Hartford Ins. Co. v. Mullinax*, 336 Ark. 335, 984 S.W.2d 812 (1999); *see also Baker v. Radiology Assocs., P.A.*, 72 Ark. App. 193, 35 S.W.3d 354 (2000); *Rhodes v. Progressive Cas. Ins. Co.*, 36 Ark. App. 183, 820 S.W.2d 293 (1991). Therefore, the trial court did not err in granting summary judgment on the issue of vicarious liability.

Finally, Brandy contends that the trial court erred in granting a motion in limine, filed by Drs. Petrino and Alston, whereby Brandy was precluded from introducing any testimony that could have led to an inference that the surgeons were vicariously liable for the actions of anyone else in the operating room. At the hearing on the motion, counsel for the doctors argued that, since the court had already granted the motion for summary judgment with respect to the vicarious liability allegation, it would be improper for Brandy to elicit any testimony regarding the doctors' responsi-

bility to supervise McVay. In response, Brandy's attorney conceded that he could not delve into anything regarding vicarious liability, but counsel insisted that he should still be able to raise the issue of whether or not the doctors had a responsibility to supervise McVay and whether or not they had negligently supervised him. However, the trial court agreed with defense counsel that negligent supervision had never been raised or pled, and therefore concluded that it would grant the motion in limine.

We will not reverse a trial court's ruling on the admission of evidence absent an abuse of discretion. *Conagra, Inc. v. Strother*, 340 Ark. 672, 13 S.W.3d 162 (2000); *Edwards v. Stills*, 335 Ark. 470, 984 S.W.2d 366 (1998). Under Ark. R. Evid. 402, irrelevant evidence is inadmissible. Here, the trial court had already dismissed Brandy's theory of vicarious liability, as well as any claims of liability on the part of McVay. Therefore, any question concerning the doctors' supervision of McVay was irrelevant, and the trial court clearly did not abuse its discretion in excluding any testimony on this issue. Negligent supervision had never been raised or pled in any of the pleadings.

At the conclusion of her brief, Brandy raises two additional arguments that 1) the trial court erred in denying her motion in limine, regarding the deposition testimony of her expert, Dr. Gerald Kaufer, wherein she sought to exclude his statement that he did not learn until just before his testimony that McVay had been dismissed from the lawsuit; and 2) the court erred in rejecting her *res ipsa loquitur* instruction. However, she offers no real argument, and certainly no authority on these questions, nor does she demonstrate how she was prejudiced by these alleged errors. Therefore, we do not consider them further.

Affirmed.