

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV–12–966

| | |
|---|---|
| | **Opinion Delivered** October 23, 2013 |
| ROYAL OVERHEAD DOOR, INC. d/b/a ROYAL HEARTH & HOME<br>APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. CV-2007-985-3] |
| V. | |
| SHAWN JERNIGAN and SHELLY JERNIGAN | HONORABLE GRISHAM PHILLIPS, JUDGE |
| APPELLEES | AFFIRMED |

## BRANDON J. HARRISON, Judge

This tort case, which involves property damage only, arose when Shawn and Shelly Jernigan's new home burned because of a negligently installed fireplace. That is the essence of the Jernigans' third amended complaint against Royal Overhead Door, Inc., and a jury was so persuaded. The Jernigans sought more than $500,000 in damages; the jury awarded $255,000 against Royal. Royal appeals the judgment entered on the jury's verdict and makes one primary legal point: as this case is postured, it may have owed a nondelegable duty to the Jernigans to properly install the fireplace, but its liability was solely vicarious in nature, so all the claims against it should have been dismissed when the claims against Lee Anderson—the man who Royal says negligently installed the fireplace—were dismissed. The rule of law Royal invokes is called the exoneration rule.

We acknowledge the general rule but do not think it applies in this case. The jury's verdict and the related judgment are therefore affirmed.

SLIP OPINION

**I.**

On an early morning in February 2007 the Jernigan family awoke to find that their house was on fire. The family safely left the house, but their home was seriously damaged. An investigation ensued, and it came to light that one of the house's two fireplaces may have been improperly installed. In October 2007 the Jernigans filed a complaint against Royal, alleging that one of the two wood-burning fireplaces that they had purchased from Royal was negligently installed. After learning that the problem fireplace had been installed by Lee Anderson, d/b/a Anderson Fireplace Installation, the Jernigans amended their complaint and named Anderson as an additional defendant. At a hearing held in April 2011 the Jernigans agreed to dismiss Anderson with prejudice

> based on the understanding of the Court that an order, an instruction on interrogatory will be given to the jury to the effect that regardless of who installed this fireplace, whether it was Royal or Anderson or any combination thereof, if the fireplace is not installed properly with a professional workmanlike manner, then Royal—either way Royal is still responsible.

Over Royal's objection, the court agreed to give a nondelegable-duty jury instruction; an order dismissing Anderson with prejudice was entered on 21 October 2011.

In November 2011 Royal filed a motion for summary judgment that argued, among other things, that there is no "nondelegable duty" law in Arkansas, that Anderson was Royal's independent contractor, that Royal cannot be held liable for an independent contractor's negligence, and that even if Anderson was Royal's agent or employee, Royal cannot be held vicariously liable because Anderson had been dismissed as a party. This motion was denied.



The case went to trial. Royal tried to keep the case from the jury by moving for a directed verdict on two main points: the Jernigans had failed to establish that the theory of nondelegable duty—which generally applies when an independent contractor's work is inherently dangerous—should apply in this case; and the Jernigans' vicarious-liability claim against it had been eliminated given Anderson's dismissal. The court denied Royal's motion and submitted the case to the jury, which returned a verdict for the Jernigans.

Royal filed a motion for judgment notwithstanding the verdict, arguing, among other things, that the nondelegable-duty instruction only applies to "inherently dangerous" activities, which do not include fireplace installations; that the Jernigans should not have been allowed to present their nondelegable-duty argument to the jury because Anderson was an independent contractor; and that the Jernigans' dismissal of Anderson destroyed their ability to make claims against Royal based on vicarious liability. The court entered a final judgment and an order denying the JNOV. An amended judgment disposing of miscellaneous claims not important to this appeal was subsequently entered, and Royal timely appealed the adverse judgment and the denial of its posttrial motion.

## II.

Royal's particular point on appeal is "whether the dismissal with prejudice of the Jernigans' claim against Anderson eliminated Royal's liability to the Jernigans as a matter of law." Royal cites *Stephens v. Petrino*, 350 Ark. 268, 279, 86 S.W.3d 836, 843 (2002) to support its argument that "when an employee has been released or dismissed and the employer has been sued solely on a theory of vicarious liability, any liability of the employer is likewise eliminated." Royal argues that Anderson, not it, was the negligent

SLIP OPINION

actor in this case, so Royal's liability could have only been attributable to Anderson's faulty installation of the fireplace. In Royal's view, its liability is therefore vicarious as a matter of law given the trial record. It specifically argues that a nondelegable duty is a form of vicarious liability, meaning that even if Royal owed a nondelegable duty to the Jernigans—a contention Royal does not appeal—the "rule of exoneration" that the Arkansas Supreme Court applied in *Stephens* could have and should have been applied to Royal's benefit when the circuit court dismissed Anderson from the case with prejudice.

The Jernigans see things differently. They argue that Royal is directly liable to them under the nondelegable-duty doctrine, so Royal's attempt to apply the vicarious-liability doctrine is mistaken. They cite *Armiger v. Associated Outdoor Clubs, Inc.*, 48 So. 3d 864, 874–75 (Fla. Dist. Ct. App. 2010), for their proposition that a nondelegable-duty claim is a direct-liability claim. The Jernigans stress that this is not an agency case or an employment case; it is a nondelegable-duty case, and the cases Royal cites, like *Stephens*, do not permit Royal to avoid the judgment.

We review questions of law *de novo*, and Royal has presented one to us. *Med. Assurance Co., Inc. v. Castro*, 2009 Ark. 93, 302 S.W.3d 592. To address Royal's argument that the Jernigans' claim was vicarious as a matter of law and that we must apply the rule of exoneration, some more procedural detail is important. To begin, the operative complaint when the case was tried alleged direct liability against Royal, not solely vicarious theories of liability, if any. During the trial, the Jernigans did not move to amend their complaint to allege claims for relief based solely on a vicarious-liability



theory. And at the trial's end, the Jernigans presented the crux of their case to the jury through the following jury instructions:

> Royal had a duty to install the fireplace and/or flue pipe in question in a professional workmanlike manner with ordinary care. Royal cannot avoid this duty by delegating it to any third party.
>
> —
>
> and
>
> —
>
> In determining whether Royal was negligent, you may consider the degree of skill and care ordinarily possessed and used by contractors doing work similar to that shown by the evidence in this case.

Though Royal pointedly challenged the court's jury instructions throughout the trial and in its postjudgment motion, it does not do so here. Royal candidly stated in its appellate briefs and during oral argument that it was not appealing the nondelegable jury instruction itself. It did not challenge the other instruction either. So we must take these instructions as we find them.

This is where the nuance of Royal's argument comes into play. Again, it argues that its duty to the Jernigans was vicarious as a matter of law although the jury was told Royal owed a nondelegable duty to the Jernigans. In a home-construction context, like this case presents, a nondelegable duty may refer to an exception to the general rule that an actor is not vicariously liable for an independent contractor's negligence. *See* Restatement (Third) of Torts: Physical & Emotional Harm §§ 57–67 (2012). The term nondelegable duty can also refer to strict-liability principles in rare instances. *See* Dan D. Dobbs, The Law of Torts § 337 (2000) (explaining nondelegable duties regarding military tortfeasors); W. Page Keeton, et al., Prosser & Keeton on the Law of Torts § 71, at 511–12 (5th ed. 1984) (discussing nondelegable duty).

SLIP OPINION

The Restatement also notes that the term "nondelegable duty" can have more than one meaning. *See* Restatement (Third) of Torts: Physical & Emotional Harm § 57, cmt. b. As the reporter's notes to the Restatement point out, a court may use "nondelegable duty" as a convenient label; or the phrase may denote a substantive point of law. *Id.* Though courts do not always use the term consistently, some courts, as the Jernigans note, have held that a nondelegable duty is a direct duty in premise-liability cases. *See, e.g., Armiger*, 48 So.3d at 864.

So the current state of some persuasive authorities seems to more or less cohere around the point that a "nondelegable duty" may encompass either a direct or a vicarious theory of liability depending on the case; the term is not necessarily limited to one theory or the other. A case's context matters.

We tend to agree with, or at least do not reject out of hand, Royal's point that the term "nondelegable duty" may apply in a vicarious-liability case. But this only means that we turn to this case's context to determine how to apply the term. Here, we find that Royal's negligence was direct in nature. The Jernigans presented this case to the jury as one where Royal had to install the fireplace in a professional, workmanlike manner but did not do so. That the nonstandard, nondelegable instruction told the jury that Royal "cannot avoid this duty by delegating it to any third party" does not automatically mean that the Jernigans' case against Royal was based solely on vicarious liability as a matter of law.

For this appeal's purpose, Royal accepted that it owed a legal duty to the Jernigans. Specifically, it accepted that its duty was to install the fireplace at issue in a professional,

SLIP OPINION

workmanlike manner. And there was evidence—through expert testimony and Anderson's own testimony—that Anderson improperly installed the fireplace. At the trial's end, the jury was never asked to decide whether Royal was legally separate from Anderson for liability purposes. Consequently, the jury was allowed to connect Anderson's conduct with Royal.

This leads to an important point in addition to the state of the jury instructions, which is that no one in this case established the nature of the legal relationship between Royal and Anderson. Specifically, neither the court nor the jury decided the legal relationship between Anderson, Royal, and the Jernigans. All we know, as a legal-relationship matter, is that Anderson was a codefendant in the case and that the circuit court dismissed him with prejudice before the trial began.

### III.

This brings us back to the exoneration rule. Royal's liability was direct in this case. We cannot therefore extinguish Royal's liability as a matter of law just because Anderson was dismissed and Royal was not.

Affirmed.

WYNNE and BROWN, JJ., agree.

*Wright, Lindsey & Jennings LLP*, by: *Kyle R. Wilson* and *Jane A. Kim*; and *Friday, Eldredge & Clark, LLP*, by: *Robert S. Shafer* and *Guy Alton Wade*, for appellant.

*Evans & Dixon, LLC*, by: *Richard D. Gerber*; and *Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Stuart Miller*, for appellees.