Cite as 2021 Ark. App. 35

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-18-699

| | |
|---|---|
| CAROLYN MAGRANS, AS GENERAL PERSONAL REPRESENTATIVE OF THE ESTATE OF RAMON MAGRANS, DECEASED; AND THE WRONGFUL DEATH BENEFICIARIES OF RAMON MAGRANS, DECEASED<br><br>APPELLANTS<br><br>V.<br><br>EDWARD LUCAS ANDRADA, M.D.; SARAH ROBERTSON, M.D.; SARAH ROBERTSON, M.D., P.A.; AND RADIOLOGISTS OF RUSSELLVILLE, P.A.<br><br>APPELLEES | Opinion Delivered: January 27, 2021<br><br>APPEAL FROM THE POPE COUNTY CIRCUIT COURT<br>[NO. 58CV-14-353]<br><br>HONORABLE DENNIS CHARLES SUTTERFIELD, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

This appeal arises from three separate orders granting summary judgment to the appellees in a medical–negligence action. The appellants are Carolyn Magrans, the personal representative of the estate of Ramon Magrans, deceased, and the wrongful death beneficiaries of Ramon Magrans (collectively the "Magranses"). The appellees, Radiologists of Russellville, P.A.; Dr. Edward Lucas Andrada; Dr. Sarah Robertson; and Sarah Robertson, M.D., P.A., are the physicians or their employers who rendered medical care to Ramon Magrans (Ramon).

On October 13, 2016, the circuit court granted summary judgment in favor of Radiologists of Russellville, P.A. (ROR), and on May 10, 2018, entered two separate orders granting summary judgment in favor of Dr. Edward Lucas Andrada (Dr. Andrada); and Sarah Robertson, M.D., and Sarah Robertson, M.D., P.A. (collectively "Dr. Robertson"). The Magranses filed a timely notice of appeal on May 31, 2018.

I. *Background Facts*

On November 17, 2012, Ramon suffered a fall in his bathroom injuring his face, head, neck, and chest and unknowingly fractured vertebras in his spine. Ramon obtained a computed tomography (CT) angiogram of his spine at ROR, and the results were read by a physician employed at the facility named Jeffrey A. Hale, M.D., on December 14, 2012. The CT scan allegedly showed multiple recent compression fractures of the spine, but no notation of the abnormalities was made in the report.

On January 18, 2013, Ramon went to Millard-Henry Clinic in Russellville and was seen by his primary care physician, Dr. Andrada. Ramon complained of weakness in his legs and difficulty walking. Dr. Andrada observed that Ramon could walk but did have decreased strength; therefore, he prescribed steroid medication and ordered a lumbar magnetic resonance imaging (MRI) for the following week.

On January 21, 2013, Ramon went to the emergency department at Saint Mary's Regional Medical Center. Upon admittance, Ramon was treated by Dr. Robertson. Dr. Robertson called a neurologist at University of Arkansas for Medical Sciences (UAMS) to discuss a potential transfer but was advised that because Ramon had no loss of sensation in his lower extremities and no incontinence issues, he did not warrant neurological

2

intervention and there was no need for transfer at that time. Dr. Robertson also ordered an MRI of Ramon's lumbar spine. The next morning, before the MRI results were received, the nursing staff noted Ramon could not move his lower extremities. Dr. Robertson was notified of the change in Ramon's condition and, after evaluating him, called both Baptist Health Medical Center-Little Rock (Baptist Health) and UAMS to get him transferred to a higher level of care. Neither facility had a bed available. Ultimately, Baptist Health accepted Ramon and he was transferred to Little Rock on January 23, 2013. Ramon then underwent imaging of his entire spinal axis, which revealed compression fractures and retropulsion of bone causing compression of the spinal cord. On January 31, 2013, Ramon was transferred to UAMS; however, Ramon was permanently paraplegic.

On November 17, 2014, the Magranses filed a medical-malpractice action against ROR and Dr. Andrada as well as numerous other entities who were ultimately dismissed from the case for various reasons. Specifically, the complaint alleged ROR

> failed to have proper procedures and protocols in place and failed, through its directors, and employee or agent physicians, to provide radiology care and treatment that met the applicable standard of care. Said Defendant failed to assure that abnormal radiology studies related to Ramon Magrans were reported properly and followed-up timely.

Regarding Dr. Andrada, the Magranses alleged he "failed to properly evaluate and treat Ramon Magrans's spinal injuries, resulting in Magrans's permanent paralysis, disability, and Plaintiffs' damages."

On January 15, 2015, the Magranses amended their complaint and added Jeffrey A. Hale, M.D. (Dr. Hale); Sarah Robertson, M.D.; and Sarah Robertson, M.D., P.A., as defendants. Dr. Hale is the radiologist at ROR who read Ramon's CT scan. The second amended complaint alleged the CT angiogram showed multiple compression fractures of

3

Ramon's spine, and such findings should have been identified in the report with a suggestion that specific imaging be done to evaluate those fractures. As to Dr. Robertson, the complaint alleged she failed to provide medical evaluation, assessment, and treatment that met the applicable standards of care. The Magranses also alleged Sarah Robertson, M.D., P.A., failed to have proper policies and procedures in place to assure proper evaluation and diagnosis of Ramon.

Dr. Hale moved for summary judgment arguing all claims against him were barred by the statute of limitations. Ramon did not oppose summary judgment in favor of Dr. Hale, and the circuit court granted his motion and dismissed him with prejudice. In response, ROR filed its motion for summary judgment alleging the Magranses were precluded from maintaining their vicarious-liability claim, citing Arkansas law that states when an employee has been released or dismissed and the employer has been sued solely on a theory of vicarious liability, any liability of the employer is likewise eliminated. The Magranses filed their fourth amended complaint on October 10, 2016, the day before the hearing on ROR's motion. The amended complaint included an allegation that Paul Sarai, M.D., was a radiologist who was also involved with the CT angiogram that was performed at ROR. The amendment, however, did not include Dr. Sarai as a party to the lawsuit.

On October 11, 2016, the circuit court conducted a hearing on the motion. The circuit court orally granted summary judgment, and the ruling was reduced to a written order and filed on October 13, 2016. The order held that (1) the vicarious liability claims against ROR must fail because Arkansas law is clear that a principal cannot be vicariously liable for the acts of its agent when the liability of the agent has been eliminated; (2) ROR's

4

alleged deviation from the standard of care was not supported by any expert testimony, and even if it had been, the Magranses could not prove causation as to this claim because they would be precluded from introducing evidence of Dr. Hale's alleged improper interpretation of the CT angiogram; and (3) there was no merit to the claim of negligence on the part of ROR with respect to the preliminary interpretation of the CT angiogram provided by Dr. Paul Sarai because the only report at issue and included in the medical report was performed by Dr. Hale.

On April 10, 2018, Dr. Robertson filed for summary judgment and alleged the Magranses could not meet their burden of proof because they do not have the requisite expert testimony to demonstrate any action or omission of Dr. Robertson proximately caused Ramon to suffer injuries that would have otherwise not occurred. Additionally, on April 18, 2018, Dr. Andrada filed for summary judgment and argued Ramon lacked expert testimony to prove proximate causation to support a judgment. The Magranses objected to both motions, arguing that an emergent MRI would have revealed the compression fractures and led to a different outcome for Ramon.

On May 8, 2018, the circuit court held a hearing on the pending summary-judgment motions. At the conclusion of the hearing, the court took the matters under advisement. On May 10, 2018, the circuit court granted summary judgment in full to Dr. Robertson and Sarah Robertson, M.D., P.A., as well as Dr. Andrada by two separate orders. Both orders stated the Magranses failed to create an issue of material fact to be tried regarding the element of causation necessary to prove the defendants caused Ramon's injuries. Dr.

Robertson and Dr. Andrada were both dismissed with prejudice in their entirety.[1] This appeal followed.[2]

On appeal, the Magranses argue that (1) it was error for the circuit court to grant summary judgment to ROR alleging that termination of Dr. Hale's liability did not terminate ROR's liability; and (2) it was error for the circuit court to grant summary judgment to Dr. Andrada and Dr. Robertson because they presented expert testimony showing each doctor's negligence was the proximate cause of Ramon's paralysis.

## II. *Standard of Review*

Our supreme court has held that when reviewing whether a motion for summary judgment should have been granted, we determine whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Id.* All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Id.* Summary judgment is no longer viewed by this court as a drastic remedy; rather, it is viewed simply as one of the tools in a circuit court's efficiency arsenal. *Smith v. Rogers Grp., Inc.,* 348 Ark. 241, 72 S.W.3d 450 (2002). It should be granted only when it is clear that there

---

[1]All other defendants were dismissed either by motion to dismiss for improper venue or voluntary dismissal with prejudice.

[2]Ramon died on June 23, 2018; thereafter, the circuit court designated Carolyn Magrans as general personal representative, the proper party acting for the estate.

6

are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Id.*

In reviewing an order granting summary judgment, appellate courts are charged with determining first whether the moving party established prima facie entitlement to summary judgment and then whether the nonmoving party met proof with proof. *Bales v. City of Fort Smith*, 2016 Ark. App. 491, 505 S.W.3d 705. If a moving party supports his or her motion for summary judgment by making a prima facie showing of an absence of factual issues and entitlement to judgment as a matter of law, and the adverse party fails to set forth specific facts showing a genuine issue of material fact, then we will not say the circuit court erred in granting summary judgment.

Summary judgment is not proper, however, "where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypothesis might reasonably be drawn and reasonable minds might differ." *Thomas v. Sessions*, 307 Ark. 203, 818 S.W.2d 940 (1991). The object of summary-judgment proceedings is not to try the issues but to determine if there are any issues to be tried, and if there is any doubt whatsoever, the motion should be denied. *Id.*

III. *Discussion*

A. Dismissal of ROR

For their first point on appeal, the Magranses argue that it was error for the circuit court to grant summary judgment to ROR alleging that termination of Dr. Hale's liability did not terminate ROR's liability. Specifically, the Magranses argue that (1) the case law upon which the circuit court based its ruling does not act to terminate ROR's liability under

7

the specific circumstances of this case; (2) ROR's vicarious liability was not solely based on the negligence of Dr. Hale but also on any of its agents who misread the CT angiogram, including Dr. Sarai; and (3) the direct-liability claim against ROR should have survived summary judgment because ROR's motion did not allege a failure of proof of ROR's direct negligence; therefore, the circuit court erred in faulting the Magranses for failing to set forth proof to support such claim.

First, the Magranses argue that the timing of their vicarious-liability claim against ROR and the reason for Dr. Hale's termination from the lawsuit take it outside the purview of the case law upon which the circuit court relied. The Magranses argue that no case law "presents the fact pattern displayed by this case where initial allegations of vicarious liability for the acts of an agent were made within the limitations period then the agent was added to the suit individually after limitations had passed." Furthermore, the Magranses argue that the cases relied on by the circuit court all involved the agent's liability being terminated by an adjudication on the merits rather than a limitations bar. Appellees counter that timing and basis of the termination of the agent makes no difference because Arkansas law dictates that when an agent's liability is terminated, so is the vicarious liability of the principal.

The question of law presented is whether the Magranses can maintain their claim that ROR is vicariously liable for the actions of Dr. Hale even though Hale was granted summary judgment. As to issues of law presented, our review is de novo, meaning the entire case is open for review. *Washington Cty. v. Bd. of Trs. of the Univ. of Ark.*, 2016 Ark. 34, at 3, 480 S.W.3d 173, 175. It is well-established Arkansas law that when an employee has been released or dismissed, and the employer has been sued solely on a theory of

vicarious liability, any liability of the employer is likewise eliminated. *Hartford Ins. Co. v. Mullinax*, 336 Ark. 335, 984 S.W.2d 812 (1999). The basis for vicarious liability is "the master is liable only for the act of his servant, and not for anything he himself did, therefore, when the servant is not liable, the master for whom he was acting at the time should not be liable." *Rhodes v. Progressive Cas. Ins. Co.*, 36 Ark. App. 185, 188–89, 820 S.W.2d 293, 295 (1991).

Appellees rely on our supreme court case, *Stephens v. Petrino*, 350 Ark. 268, 86 S.W.3d 836 (2002), to support their argument that the circuit court correctly concluded the Magranses' claim against ROR was purely derivative of the extinguished liability of Dr. Hale; therefore, summary judgment was proper. In *Stephens*, the plaintiffs sued two surgeons related to an esophageal perforation sustained during surgery. 350 Ark. at 270–71, 86 S.W.3d at 837–38. Initially, the plaintiffs alleged one of the surgeons negligently perforated Stephens's esophagus, or alternatively, an unidentified "John Doe" in the operating room who was "an employee, agent, or other member of the hospital staff" must have been responsible. *Id.* at 271, 86 S.W.3d at 838. Plaintiffs' amended complaint substituted a certified registered nurse anesthetist (CRNA) involved in the surgery for the "John Doe" and alleged the surgeons were vicariously liable for that individual's conduct in perforating Stephens's esophagus. *Id.* The CRNA was granted summary judgment based on the expired statute of limitations. In response, the surgeons moved for summary judgment as to the vicarious-liability claim, which was granted by the circuit court and affirmed on appeal. *Id.* at 279, 86 S.W.3d at 843. On appeal, the plaintiffs in *Stephens* focused heavily on the timing of the claim against the surgeons, but our supreme court rejected that

9

argument and held firm to the basic concept of agency law that dismissal with prejudice of the agent results in dismissal of the derivative vicarious-liability claim. *See also Mullinax*, 336 Ark. 335, 984 S.W.2d 812; *Baker v. Radiology Assocs., P.A.*, 72 Ark. App. 193, 35 S.W.3d 354 (2000); *Rhodes*, 36 Ark. App. 185, 820 S.W.2d 293.

We find no merit to the Magranses' argument that the timing of their vicarious-liability claim against ROR distinguishes it from *Stephens*. The *Stephens* court expressly declined to discuss the arguments related to the timing of the claims against the principal. As in *Stephens*, the circuit court concluded the substantive effect of the dismissal of the agent (Dr. Hale) controlled the outcome rather than the timing of the claim. Furthermore, the Magranses' argument that the dismissal of Dr. Hale on limitations grounds does not extinguish the vicarious liability of ROR is not supported by case law. We have expressly held the same basic rule of agency law applies regardless of whether a "servant's liability" is determined by a release or by a verdict. *Rhodes*, 36 Ark. App. at 189, 820 S.W.2d at 295. Additionally, the agent in *Stephens* was also dismissed due to a statute of limitations bar. In light of this precedent, we find no error in the circuit court's ruling that dismissal of Dr. Hale resulted in the dismissal of the derivative vicarious-liability claim against ROR.

Next, the Magranses argue a fundamental error committed by the circuit court was the misperception that ROR's vicarious liability was based solely on Dr. Hale's negligence. The day prior to the summary-judgment hearing, the Magranses amended their complaint to include an allegation that Dr. Paul Sarai, another radiologist at ROR, misread the CT angiogram as part of a preliminary interpretation of the same report that was ultimately finalized by Dr. Hale. At the hearing, ROR disputed that Dr. Sarai was an agent of ROR

and pointed to the lack of proof in the Magranses' summary-judgment response to support ROR's vicarious liability for Dr. Sarai's actions. The circuit court found no merit to the Magranses' argument because the only report included in the medical record was performed by Dr. Hale.

The Magranses argue that because their initial complaint asserted vicarious liability on the part of any "agents," in the plural, that is sufficient to sustain a claim against ROR for the actions of Dr. Sarai. This argument fails, however, under the basic principles of summary judgment. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Smith*, 348 Ark. 241, 72 S.W.3d 450. The respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact. *Hughes W. World, Inc. v. Westmoor Mfg. Co.*, 269 Ark. 300, 601 S.W.2d 826 (1980). The Magranses' argument that they were not required to respond with proof of Dr. Sarai's negligence because ROR's motion dealt specifically with Dr. Hale isn't persuasive. By the Magranses' own admission, they amended their complaint for the fourth time merely to include Dr. Sarai's name. The allegations and cause of action forming the basis of vicarious liability upon ROR was included in the original complaint; however, the Magranses failed to demonstrate a genuine issue of material fact regarding other agents despite participating in discovery. Therefore, we hold the circuit court did not err in its finding that the Magranses' vicarious-liability claim involving Dr. Sarai lacked merit.

11

Lastly, the Magranses argue that their direct-liability claim against ROR should have survived summary judgment because the motion did not allege a failure of proof of ROR's direct negligence; therefore, the circuit court erred in faulting the Magranses for their failure to provide proof supporting such claim. The Magranses' direct-negligence claim against ROR rests on the allegation that the radiology group "failed to have proper procedures and protocols in place" regarding the interpretation of reports. The circuit court held this alleged deviation from the standard of care was not supported through any expert testimony as required, and furthermore, the Magranses could not prove causation because they would be precluded from introducing evidence of Dr. Hale's alleged negligence.

The purpose of summary judgment is not to try the issues but to determine if there are issues to be tried. Whether the claims against ROR are couched as vicarious liability or direct liability is irrelevant. The Magranses have not shown that ROR failed to comply with some requirement that independently caused harm separate and apart from Dr. Hale. Furthermore, the Magranses' reliance on *Medical Assurance Co. v. Castro*, 2009 Ark. 93, 302 S.W.3d 592, is misplaced. This is not a situation, as in *Castro*, in which a clam is made against a principal for negligent supervision and retention of an employee. Rather, the circuit court was correct that all roads lead back to Dr. Hale, and any claim that the actions of ROR led to Dr. Hale's report is barred as liability for any such claim was extinguished with the dismissal of Dr. Hale.

Our court is cognizant of the Magranses' proclamation that the allegations in their initial complaint were sufficient for them to commence suit against ROR, and had they never added Dr. Hale as a defendant, ROR would not be entitled to judgment as a matter

12

of law once the limitations period passed for Dr. Hale. The appellants are correct that a plaintiff suing for the wrongful act of an agent may elect to sue the agent alone, the principal alone, or both. *Barnett v. Isabell*, 282 Ark. 88, 666 S.W.2d 393 (1984). However, appellants made the decision to add Dr. Hale as a party after the statute of limitations had run and therefore have to deal with the consequences of doing so, regardless of how harsh of a result it yields. Where the agent has no liability, the principal cannot be liable. ROR, therefore, is entitled to judgment as a matter of law, and the circuit court's order granting summary judgment is affirmed.

### B. Dismissal of Dr. Andrada and Dr. Robertson

For their second point on appeal, the Magranses contend that if an MRI of Ramon's thoracic spine had been done, it would have revealed the compression fractures and identified a neurologic emergency existed and "more likely than not" would have resulted in an immediate transfer and surgery. In essence, the Magranses argue that if either Dr. Andrada or Dr. Robertson had complied with the standard of care, Ramon would not have become a paraplegic. In response, both Dr. Andrada and Dr. Robertson argue that the Magranses' experts failed to offer anything beyond pure speculation that the result would have been any different if either of them had ordered a thoracic spine MRI.

To establish a prima facie case of negligence, a plaintiff must demonstrate that the defendant breached a standard of care, that damages were sustained, and that the defendant's actions were a proximate cause of those damages. *Union Pac. R.R. Co. v. Sharp*, 330 Ark. 174, 952 S.W.2d 658 (1997). Proximate causation is an essential element for a cause of action in negligence. *Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996). Proximate

13

cause is that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred. *Wal-Mart Stores, Inc. v. Kilgore*, 85 Ark. App. 231, 148 S.W.3d 754 (2004). This traditional tort standard requires proof that "but for" the tortfeasor's negligence, the plaintiff's injury or death would not have occurred. *Dodd v. Sparks Reg'l Med. Ctr.*, 90 Ark. App. 191, 204 S.W.3d 579 (2005).

Although proximate causation is usually a question of fact for a jury, where reasonable minds cannot differ, a question of law is presented for determination by the court. *Cragar v. Jones*, 280 Ark. 549, 660 S.W.2d 168 (1983). In medical-injury cases, it is not enough for an expert to opine that there was negligence that was the proximate cause of the alleged damages. *Kilgore*, *supra*. The opinion must be stated within a reasonable degree of medical certainty. *Id*. When a party cannot present proof on an essential element of his claim, the moving party is entitled to summary judgment as a matter of law. *Sanders v. Banks*, 309 Ark. 375, 830 S.W.2d 861 (1992).

The Magranses' two expert witnesses were Dr. Donald Frey, the standard-of-care expert, and Dr. Nicholas Theodore,[3] the causation expert. During his deposition, Dr. Frey testified it was his expert opinion, regarding both doctors, that a full spine MRI should have been ordered. However, Dr. Frey expressed no expert opinion on proximate cause but instead indicated he could not make such a determination. Specifically, when asked when surgical intervention could have occurred that might have changed Ramon's medical

---

[3]Dr. Theodore was excluded from providing standard-of-care opinions by the circuit court.

14

outcome, Dr. Frey stated that he would not give testimony as to a particular time. Furthermore, when questioned regarding whether he could opine that having the thoracic spine MRI would have changed anything about the availability of beds at either hospital, Dr. Frey stated that he could not answer with certainty.

The Magranses concede that evidence of proximate cause hinges on the testimony of their neurosurgeon, Dr. Theodore. At his deposition, Dr. Theodore testified that an MRI indicating a spinal cord compression is a "known emergency," and if Dr. Robertson would have told UAMS that Ramon had a spinal cord compression, there is "no doubt" he would have been transferred emergently and not ended up with paralysis. In summarizing, Dr. Theodore testified, "Knowing that there's a compression of the spinal cord, I think all alarm bells would have gone off, and hopefully he would have been sent to University of Arkansas or whatever tertiary care facility is available with neurosurgical coverage." However, when asked to provide his expert opinion on when surgery needed to have been performed to salvage Ramon's lower extremity function, Dr. Theodore could not offer an opinion on timing other than to state there likely would have been "some preservation" of function if surgery had occurred the day Ramon was transferred to Baptist Health.

Here, while the expert testimony reveals that a spinal cord compression is a neurological emergency, neither expert could testify as to what was occurring at either UAMS or Baptist Health or that having an MRI of the thoracic spine would have changed anything about the bed availability at either facility. Dr. Frey testified that even without imaging, he believed Dr. Robertson provided the information necessary to UAMS to indicate an emergent situation, even stating she was concerned about it being an emergency

prior to the onset of Ramon's paralysis. Even the next morning, after the nursing staff had informed Dr. Robertson that Ramon had lost sensation in his lower extremities, transfer to a different facility still could not be achieved. Speculative testimony about what might have happened does not suffice, particularly not when such testimony contradicts the evidence showing that an onset of lower extremity paralysis did not procure an immediate transfer to either facility due to bed unavailability.

Appellees cite *Ford v. St. Paul Fire & Marine Insurance Co.*, 339 Ark. 434, 5 S.W.3d 460 (1999), to support their contention that the Magranses must prove that Ramon's injury would not have occurred "but for" their alleged negligence. In *Ford*, the plaintiff sued several physicians when the decedent suffered a ruptured abdominal aortic aneurysm while awaiting an abdominal ultrasound. Our supreme court affirmed the circuit court's ruling granting summary judgment holding plaintiff's experts could not state with a reasonable degree of medical certainty that had the decedent undergone surgery earlier, he would have survived. Here, the Magranses' failure to present expert testimony linking the alleged negligence on the part of Dr. Andrada and Dr. Robertson to Ramon's outcome is the same flaw that was present in *Ford*.

We have also held that testimony from expert witnesses—in a medical–malpractice context—does not prove proximate cause when the testimony only reveals the patient "would have had a better chance" at a favorable outcome if a physician had done something differently. *Thomas v. Meadors*, 2017 Ark. App. 421, 527 S.W.3d 724. In *Thomas*, the expert witness testified that continuing with the procedure "contributed to the cardiogenic shock," but our court held that "a contributing factor is not synonymous with proximate cause."

*Id.* at 13, 527 S.W.3d at 732. At most, the Magranses have shown that the failure of Dr. Andrada and Dr. Robertson to order a thoracic MRI contributed to Ramon's not obtaining an earlier transfer, but as we held in *Thomas*, a contributing factor does not equate to the proximate cause of his injuries.

Lastly, the Magranses maintain that appellees' argument, and the circuit court's acceptance thereof, that Dr. Andrada's and Dr. Robertson's deviation from the standard of care is excused because an actor down the line did not act quickly enough was error. The Magranses contend this is a superseding intervening-cause argument that is expressly rejected in tort law. We will not consider arguments made for the first time on appeal; an appellant is limited by the scope and nature of the objections and arguments presented at trial. *McCoy v. Robertson*, 2018 Ark. App. 279, at 16–17, 550 S.W.3d 33, 42 (citing *Cox v. Miller*, 363 Ark. 54, 210 S.W.3d 842 (2005)). At trial, appellees never argued that a subsequent medical provider deviated from the standard of care nor did Dr. Andrada or Dr. Robertson assert any superseding intervening proximate-cause argument. Likewise, the Magranses never advanced the argument before the circuit court; therefore, we will not address it for the first time on appeal.

IV. *Conclusion*

The Magranses' claims against ROR were purely derivative of the extinguished liability of Dr. Hale. Accordingly, the circuit court's reliance on the precedent set forth in *Stephens* and order granting ROR summary judgment is affirmed. In addition, due to the Magranses' failure to meet "proof with proof" coupled with two expert witnesses who did

not establish proximate cause, we find the circuit court correctly granted summary judgment in favor of Dr. Andrada, Dr. Robertson, and Sarah Robertson, M.D., P.A.

Affirmed.

ABRAMSON and GRUBER, JJ., agree.

*James E. Girards*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *David P. Glover*, *Gary D. Marts*, and *David C. Jung*, for separate appellee Edward Lucas Andrada, M.D.

*Friday, Eldredge & Clark, LLP*, by: *Tyler D. Bone* and *Donald H. Bacon*, for separate appellees Sarah Robertson, M.D., and Sarah Robertson, M.D., P.A.

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Mariam T. Hopkins*, *Julia M. Hancock*, and *Mark D. Wankum*, for separate appellee Radiologists of Russellville, P.A.